## BRANAN *v.* NASHVILLE, CHATTANOOGA AND SAINT LOUIS RAILWAY COMPANY.

1. The notice which the plaintiff caused to be served on the defendant company, calling on it to produce at the trial numerous papers and documents, was, except as to certain writings actually produced and a document which the court held should have been also tendered the plaintiff, altogether too vague, indefinite, and unreasonable in scope ; and the trial judge committed no error in permitting the defendant to produce, in lieu of an original document specified in such notice, a duly certified copy of the duplicate thereof which was by law required to be kept in the office of an official of the executive department of this State.
2. The plaintiff was not concerned as to the regularity of the steps taken by the court in making the officer whose return of service was traversed a party to the proceeding ; and there was no merit in the plaintiff's motion to dismiss the traverse on the ground that it had not been filed by the defendant company before it interposed an answer to his petition.
3. The evidence adduced at the hearing demanded a finding in favor of the defendant as to the issue raised by the traverse ; and the documentary evidence which the court declined to allow the plaintiff to introduce would not, had the same been admitted, have justified a different result.

Submitted February 20,—Decided March 7, 1904.

Traverse of entry of service.     Before Judge Reid.     City court of Atlanta.     March 17, 1903.

*Mayson, Hill & McGill,* for plaintiff.
*Payne & Tye,* for defendant.

TURNER, J.     C. I. Branan complained in his petition that the "Nashville, Chattanooga & St. Louis R. R. Co., lessees and operators of the Western & Atlantic R. R. Co.," had injured and dam-

aged him in a large sum, alleging that he had stored with the defendant a large quantity of dried peaches which he had caused to be shipped to Atlanta over its road; that the peaches were negligently kept by the defendant in an improper place; and that in consequence the fruit became seriously damaged. The deputy sheriff made a return of his service of the petition and process on the 12th of February, 1901, which return was subsequently amended, by leave of the court, so as to read as follows: "Served the defendant, Nashville, Chattanooga & St. Louis R. R. Co., a corporation, by serving J. L. McCollum, Supt., by leaving a copy of the within writ and process with him in person, at the office and place of doing business of said corporation in Fulton County, Ga." At the appearance term of the case the defendant specially appeared and, before pleading to the merits, filed a traverse to the return of the officer, on the ground that it was untrue, " because J. L. McCollum was not, at the time of said service, an officer or agent of defendant Nashville, Chattanooga & St. Louis Railway, nor was said McCollum at the place or office of doing business of said deft. at the time of the alleged service." The defendant also in said traverse asked that A. J. Shropshire, the deputy sheriff, be made a party thereto, and that he be duly served. It appears that the plaintiff had notified the defendant company to produce the following papers, etc., at the trial of said traverse: " 1. The claim filed . . by plaintiff, together with all exhibits thereto. 2. All letters or notes received . . from plaintiff with reference to all or any of the fruit, or the storage thereof, concerning which " the suit was brought, as well as " copies of all letters and memoranda sent to plaintiff by " the defendant company. " 3. Contract, agreement, or lease under which the W. & A. R. R. Co. is held and operated by " the defendant " company. Also, all letters, memoranda, and other papers in [its] possession with reference to said lease and the operation of the W. & A. R. R. Co. thereunder. Also, all checks, receipts, and vouchers sent " the defendant " by the W. & A. division. Also, all ledgers, cash-books, records of transportation, and other memoranda or books showing business done by [defendant] company, especially that portion known as the W. & A. R. R. division, for and during the past five years, up to the trial of said cause. 4. Also, contract or copy of contract or duplicate thereof with J. L. McCollum for and during all or

any part of the past five years, either as superintendent of the W. & A. R. R. or otherwise.    Also, all letters received . . from said McCollum during the past five years, and copies of all letters sent to [him] during the same period.    Also, all letters and reports on file with " defendant " company from the W. & A. R. R. or any of the officers thereof, or J. L. McCollum, during the term of five years previous to the filing of said suit.    5. The minutes of " defendant " company for and during ten years previous to the filing of said suit, both of the stockholders and directors."

Upon a demand by the plaintiff for compliance with the notice, the defendant produced the claim and the exhibits attached thereto, as described in the first paragraph of the notice.    The defendant answered that the lease called for was a public law of which the court would take cognizance, and that the other portions of the notice, calling for various documents, were too indefinite and uncertain, and the bulk of the documents so called for was such that the defendant could not reasonably be expected to produce the same, especially as it was obvious that many, if not all, of them were wholly irrelevant and immaterial.    The court held that the answer of the defendant as to the production of the lease was insufficient; whereupon counsel for the defendant stated that they had acted in perfect good faith in having the defendant answer that the lease was a public law, so believing themselves; but since the court ruled otherwise, they asked for a brief time in which to produce the lease, explaining that the lease was executed in duplicate; that the defendant's duplicate was at Nashville, Tenn., the home of the defendant, which was a nonresident corporation, while the State's duplicate was in the capitol in the City of Atlanta, in which city the case was being tried; and stated that, if given time, they would send to Nashville and get the defendant's duplicate or produce a certified copy of the State's duplicate, as the court should direct.    The court thereupon announced that if counsel would produce a certified copy of the State's duplicate, this would be a sufficient compliance with the notice.    The next morning, before the conclusion of the evidence, the defendant did produce a certified copy of the State's duplicate and tendered the same to counsel for the plaintiff, who declined to accept it, insisting it was not what the plaintiff called for, not being the original.    Defendant's counsel then offered it in evi-

dence; whereupon counsel for the plaintiff objected on the ground that it was not the original. The court stated that if it was objected to, the objection would be sustained on the ground that the evidence, coming from the defendant, was irrelevant to the issue being tried. The plaintiff then filed an affidavit as to the service of the notice; as to the materiality of the evidence sought; as to the documents called for being in the possession, power, and control of the defendant, etc.; and counsel for the plaintiff moved the court for a rule against the defendant to show cause why judgment should not be rendered against it on the issue formed by the traverse. The court declined to grant this rule, and held that the answer made by the defendant to the notice served upon it was sufficient, except as to the lease called for, and that the production of a certified copy of the State's duplicate of this lease was all that could be required of the defendant. To this ruling the plaintiff excepted.

1. The lease act of 1889 (Acts of 1889, p. 363) required that the contract of lease should be executed in duplicate, and there is no suggestion from counsel for the plaintiff that this requirement of the law was not fulfilled. It appears, indeed, that the State's duplicate was at the capitol, presumably in the proper custody. Being a paper which was required to be kept on file in the proper office of the executive department, a certified copy of it was primary evidence. Civil Code, §§ 5211, 5212. We therefore think the court below did not err in holding that the production of a certified copy of the State's duplicate was a substantial compliance with the notice, so far as this lease was concerned. At any rate, it was sufficient to avoid the harsh penalty which the plaintiff sought to invoke. And we can not say that the court erred in holding that the notice, in so far as it related to other documents therein referred to but which the defendant did not attempt to produce, was altogether too indefinite and unreasonably extensive. *Parish* v. *Weed Sewing Machine Co.*, 79 *Ga.* 682; *Hamby Mountain Gold Mines* v. *Findley*, 85 *Ga.* 431; *Georgia Iron Co.* v. *Etowah Iron Co.*, 104 *Ga.* 395.

2. The plaintiff moved to strike the traverse, on the ground that no rule had been issued thereon, as required by law, directed to the deputy sheriff and calling on him to show cause why he should not be made a party; and, further, because the traverse was

filed at the same time the defendant filed an answer to the plaintiff's petition. In this connection, counsel for the plaintiff insisted that the traverse having been signed "defendant's attorneys," the same should have been stricken by the court, because a traverse to a return of service "must be filed before pleading to the merits, and when filed at the same time it is a contradiction of terms to say that the party who has filed an answer has not been served." Exception is taken to the overruling of this motion. It appears that the deputy sheriff duly acknowledged service and made no objection to the manner in which he was made a party. As he could undoubtedly have expressly waived a rule nisi, if such a rule were necessary, we do not see why his implied waiver was not sufficient, as in any other case; nor do we see that the plaintiff was in any way concerned as to the process by which the deputy sheriff was made a party. As to the other ground of the motion to strike the traverse, it is only necessary to say that while it is true that the defendant appears to have filed an answer on the same day on which the traverse was filed, yet it is recited in the traverse that the defendant specially appeared, before pleading to the merits, in order to traverse the officer's return of service; and in the answer of the defendant is an express recital to the effect that, in thus pleading to the merits, the defendant is not to be understood as "waiving any of its rights in the premises."

3. On the trial of the traverse, McCollum, the person served, swore that he was the superintendent of the Western & Atlantic Railroad Co., but had "no connection, as superintendent or in any other capacity, with the Nashville, Chattanooga & St. Louis Railway Company." He further testified that his books and papers and offices were those of the W. & A. R. R. Co., and that he held "no appointment as an employee of the" defendant company; that at the time the service was made upon him, he occupied the same position he then held and had held for several years prior thereto; that the books and accounts of the Western & Atlantic R. R. Co. are kept separate from those of the Nashville, Chattanooga & St. Louis Railway Co.; that the contracts he makes are made for the Western & Atlantic R. R. Co.; that he made a lease of a warehouse in the Austell Building, in the city of Atlanta, on July 19th, 1899, but he did so as the representative of the Western & Atlantic R. R. Co., and the defendant company had no in-

terest in the warehouse as lessee. It further appeared from the testimony of McCollum that the Western & Atlantic R. R. Co. generally used the blanks of the Nashville, Chattanooga & St. Louis Ry. Co. Indeed, he testified with considerable detail as to the relations between the two companies and as to their manner of doing business. He further stated that he was appointed by J. W. Thomas, who was the president of both companies, and that other officials of the defendant company were also general officers of the Western & Atlantic R. R. Co. A lease covering the warehouse where the plaintiff's fruit was stored was put in evidence by the defendant, the material portion of which is as follows: "State of Georgia, Fulton Co. This indenture, made this 19th July, 1899, between Roby Robinson, Manager of Estate of Joseph Banigan, (herein called the Lessor), party of the first part, and the Western & Atlantic Railroad Company (herein called the Lessee), party of the second part," etc., running for three years and signed: "Roby Robinson, Manager (L. S.); J. L. McCollum, Supt. for W. & A. R. R. (L. S.)." Shropshire, the deputy sheriff, was sworn by the plaintiff, and stated that the return of service, as amended, was correct. The witness further testified, however, as follows: "I have understood Mr. McCollum was superintendent of the Western & Atlantic Railroad, and the Nashville, Chattanooga & St. Louis leased the W. & A. I use the word 'superintendent' of the Western & Atlantic Railroad as of that division leased by" the defendant company. "I think the Western & Atlantic Railroad is a corporation separate from the Nashville, Chattanooga & St. Louis. My entry of service referred to J. L. McCollum as superintendent of the Western & Atlantic Railroad Company, as leased by" the defendant company. "I served McCollum from the fact that he was superintendent of the Western & Atlantic Railroad, and we thought him the proper officer on whom to serve the paper in this case I have seen him in the office and have served a great many papers on him in the Austell Building; never as superintendent of the Nashville, Chattanooga & St. Louis Railroad. I considered McCollum was the highest officer of this end of the line. In other words, he was the superintendent of the Western & Atlantic corporation. The place of business referred to in my return was the place of business of the Western & Atlantic division. . . By place of business, I mean Major McCol-

lum's place of business. . . I served Major McCollum at this place in the effort to serve" the defendant company through him. "I don't know whether they have signs of N., C. & St. L. on the door or not. I remember having seen the W. & A. sign on the doors in the Austell building." The plaintiff also offered in evidence three postal cards, "headed, Nashville, Chattanooga & St. Louis Railway, lessee of Western & Atlantic Railway, Office of Freight Agent, Atlanta, Ga.," addressed to the plaintiff, notifying him of the receipt of certain cars of dried peaches, and signed: "W. & A. R. R." Also, a printed notice, likewise "headed," informing him of the receipt in Atlanta of another shipment; and also an "expense bill of freight received in Atlanta, headed Nashville, Chattanooga & St. Louis Railway, marked paid," and purporting to have been signed: "Nashville, Chattanooga & St. Louis Railroad, lessee of W. & A." The plaintiff also tendered in evidence a receipt, marked paid March 29th, 1900, the same being in the following form: "Mr. C. I. Branan, Atlanta, Ga. Storage 10/21/99 to 3/27/00, to W. & A. . . . . . . . Dr.    On S. P. 14940, contains dried peaches, . . . . . . . $24.00," marked paid by "Nashville, Chattanooga & St. Louis Railway, lessee W. & A. Road, D. B. Carson, Agent." Similar receipts, specifying other car-loads of fruit, were tendered by the plaintiff at the same time, "all the receipts being for the storage of the peaches in question."

The defendant company objected to the introduction of this documentary evidence, and presented to the court a motion to direct a verdict in its favor, on the ground that "the evidence disclosed that no service had been made upon defendant." The court thereupon excluded the documentary evidence offered by the plaintiff, and directed the jury to return a verdict in favor of the defendant company. To the action of the court in thus disposing of the case the plaintiff duly excepted. It appearing from the evidence that the Nashville, Chattanooga & St. Louis Railway Company had leased the W. & A. Railroad from this State under the lease act of 1889, it must be true, as matter of law, that under the terms of that act the lessee at once became a body politic and corporate under the laws of Georgia, under the name and style of the "Western & Atlantic Railroad Company," and subject to suit in that name only. *Edwards'* case, 91 *Ga.* 24. That act

further provided, that, after the execution of the lease, the lessee should have power to make all rules and regulations usual and proper for the working and management of the leased road, and not in conflict with the constitution and laws of this State or of the United States; and that the principal office and place of doing business of such lessee should be in this State. The evidence introduced, when considered in connection with the provisions of the lease act just referred to, demanded a finding in favor of the defendant company on the issue formed by the traverse; and the documentary evidence excluded by the trial judge would not, had the plaintiff been permitted to introduce it, have justified a different result.

*Judgment affirmed.     All the Justices concur, except Simmons, C. J., absent.*