### 5871. WESTERN & ATLANTIC RAILROAD CO. *v.* PEACOCK.

1. Under repeated rulings of this court, an assignment of error upon the refusal to grant a nonsuit will not be considered, where subsequently a verdict is rendered against the defendant, and in a motion for a new trial complaint is made that the verdict is contrary to the evidence and without evidence to support it.

2. While the Western & Atlantic Railroad is leased to the corporation known as the Nashville, Chattanooga & St. Louis Railway, the corporation controlling and operating the Western & Atlantic Railroad is, under the "lease act" (Acts of 1889, p. 362), not the Nashville, Chattanooga & St. Louis Railway, but an entirely separate and distinct corporation, viz., the Western & Atlantic Railroad Company. It follows that where an action for a tort was brought against the Western & Atlantic Railroad Company, and the proof showed that the injury complained of was by the Nashville, Chattanooga & St. Louis Railway, a verdict for the plaintiff was not supported by the evidence; and the motion for a new trial should have been granted.

DECIDED JULY 2, 1915. ON REHEARING, SEPTEMBER 30, 1915.

Action for damages; from city court of Atlanta—Judge H. M. Reid. June 13, 1914.

*Tye, Peeples & Jordan,* for plaintiff in error.

*Atkinson & Born,* contra.

BROYLES, J.  C. L. Peacock sued the Western & Atlantic Railroad Company, alleging, that while he, as a postal clerk, was on a run between Nashville, Tennessee, and Atlanta, Georgia, upon a passenger-train of the defendant, when that train reached the car-shed at Chattanooga, and while backing in under the shed, the rear end of the train negligently came into collision with a car standing on the defendant's track, the engineer of the defendant negligently backing his engine with unnecessary violence and force.  There was no allegation that the plaintiff was injured by the negligence of the engineer or any of the employees of the Nashville, Chattanooga & St. Louis Railway, nor was it alleged that any defect existed in the tracks or structures of the Western & Atlantic Railroad Company. The only negligence complained of was that of the engineer alleged in the petition to be the engineer of the Western & Atlantic Railroad Company, in improperly handling his engine.

The undisputed testimony upon the trial showed that Peacock was a postal clerk on a train of the Nashville, Chattanooga & St. Louis Railway, and that when this train reached Chattanooga from Nashville it backed into the car-shed on to a track of the Western & Atlantic Railroad Company, and that at the time of the alleged injury to Peacock, the Nashville, Chattanooga & St. Louis Railway crew, which started from Nashville, was still in control of this train in Chattanooga; that none of the passengers for Chattanooga had disembarked from the train; nor had the mail, baggage, or express for Chattanooga been unloaded; nor had the Western & Atlantic Railroad Company's train-crew, passengers, mail, baggage or express gotten on or been put on the train at Chattanooga for carriage over the defendant's line toward Atlanta; and not until after the train was coupled to a sleeping-car standing on the defendant's track was the train delivered to the Western & Atlantic Railroad Company.  The undisputed evidence further shows that the Nashville, Chattanooga & St. Louis Railway's crew operated this train from Nashville to Chattanooga, operated it at the Chattanooga car-shed until after the coupling to the sleeper was made (the coupling which caused the plaintiff's injury), and that then the engine of the Nashville, Chattanooga & St. Louis Railway was cut loose, and the passengers, mail, baggage, and express for Chattanooga were discharged from the train, and that then the engine of the defendant company was coupled on to the train, and a West-

ern & Atlantic Railroad crew (a separate and distinct crew) took charge of the train to operate it from Chattanooga to Atlanta, and the passengers, mail, baggage, and express intended for carriage over the defendant company's line from Chattanooga to Atlanta were taken aboard the train.

It is insisted by the learned counsel for defendant in error that, under the ruling of the Supreme Court in *Nashville, Chattanooga & St. Louis Ry. Co.* v. *Edwards,* 91 *Ga.* 24 (16 S. E. 347), this suit was properly brought against the Western & Atlantic Railroad Company, and that it could not have been brought against the Nashville, Chattanooga & St. Louis Railway. We can not agree with this view. That decision holds only that where a tort is committed by the Western & Atlantic Railroad Company, that company, and not the Nashville, Chattanooga & St. Louis Railway, must be sued. It nowhere holds that the Nashville, Chattanooga & St. Louis Railway can not be sued for its own tort, although its train causing the injury may have been on the tracks of the Western & Atlantic Railroad Company in Chattanooga, if when the injury occurred the crew of the Nashville, Chattanooga & St. Louis Railway was still in charge of the train, and it had not been transferred to the Western & Atlantic Railroad Company, and the train of the former company had gone upon the tracks of the latter at a terminal point for the purpose only of transferring the train to the latter company. Under the lease act itself, the Western & Atlantic Railroad Company was created as an entirely separate and distinct corporation from the corporation known as the Nashville, Chattanooga & St. Louis Railway. The latter company runs its trains from Nashville to Chattanooga, and the former company from Chattanooga to Atlanta. Chattanooga is the terminal point where the jurisdiction of the latter company ends and that of the former begins. The fact that the Nashville, Chattanooga & St. Louis Railway, when its train arrives in Chattanooga, at the end of the run from Nashville, backs the train upon the track of the Western & Atlantic Railroad Company, for the purpose of transferring the train to the latter company, does not change the control of the train from the one company to the other until the transfer is complete and the train is taken in charge by the Western & Atlantic Railroad Company. Under the terms of the lease act, if the alleged tort in the instant case had been by servants or agents of

the Western & Atlantic Railroad Company, the suit would properly have been brought against that company; but where the undisputed evidence is that the alleged tort was by agents of the Nashville, Chattanooga & St. Louis Railway, and was committed not while operating a train of the Western & Atlantic Railroad Company, but while they were still operating the train of the former company, suit should have been brought against that company, and not against the Western & Atlantic Railroad Company. Whether the Western & Atlantic Railroad Company is liable to the plaintiff for the negligence of the Nashville, Chattanooga & St. Louis Railway because it allowed that company to use its tracks at the terminal point in Chattanooga is not a question in this case, there being no allegation charging the Western & Atlantic Railroad Company with liability on that ground.

The Western & Atlantic Railroad Company being an entirely separate and distinct corporation from the Nashville, Chattanooga & St. Louis Railway, it is not true that when the train of the latter company went on to the track of the Western & Atlantic Railroad Company the servants of the Nashville, Chattanooga & St. Louis Railway operating the train became, so far as third persons were concerned, the servants of the Western & Atlantic Railroad Company, and that their acts on the tracks and property of the Western & Atlantic Railroad Company would be the acts of the agents of the Western & Atlantic Railroad Company; and the charge of the court to this effect, complained of in the 4th ground of the motion for a new trial, was error. In the lease act there is nothing that recognizes a difference between the Western & Atlantic Railroad Company and any other railroad corporation. The Nashville, Chattanooga & St. Louis Railway and the Western & Atlantic Railroad Company, as before stated, are distinct and separate corporations. This has been decided a number of times by this court and by the Supreme Court. See *N., C. & St. L. Ry. Co.* v. *Edwards,* supra; *Branan* v. *N., C. & St. L. Ry. Co.,* 119 *Ga.* 738 (46 S. E. 882); *Armour Car Lines* v. *Summerour,* 5 *Ga. App.* 619 (3) (63 S. E. 667). The lease act itself makes the Western & Atlantic Railroad Company and the Nashville, Chattanooga & St. Louis Railway distinct and separate corporations, and under that act there is nothing to make the Western & Atlantic Railroad Company liable for torts of the employees of the Nashville, Chattanooga & St. Louis Rail-

way.  The Western & Atlantic Railroad was not leased by a Georgia corporation.  The lease act provides (Acts 1889, section 8, p. 366) that "the persons, associations or corporations accepted as lessees under this act, if not already a corporation created under the laws of Georgia, shall, from the time of such acceptance and until after the final adjustment of all matters springing out of this lease contract, become a body politic, under the laws of this State, under the name and style of the Western & Atlantic Railroad Company, which body corporate shall be operated only from the time of their taking possession of said road as lessees; and it shall have the power to sue and be sued on all contracts made by said company in any county through which the road runs, after the execution of said lease, or for any cause of action which may accrue to said company and to which it may become liable.  .  .  Provided further, that if said lessee is a corporation already incorporated under the laws of Georgia, it shall operate said railroad as the 'Western & Atlantic Railroad,' and such lessee may be sued on any contract or cause of action arising out of said lease for the operation of said road, in any county through which the said road runs."

It will be seen that there is a difference as to liability when the road is leased to a non-resident corporation, such as the Nashville, Chattanooga & St. Louis Railway, instead of to a company chartered under the laws of Georgia.  In the former case the lease says: "It shall have the power to sue and be sued,  .  .  for any cause of action which may accrue to said company and to which it [the Western & Atlantic Railroad Company] may become liable;" while if leased to a corporation already incorporated under the laws of Georgia, "it shall operate said railroad as the 'Western & Atlantic Railroad,' and such lessee may be sued on any contract or cause of action arising out of said lease for the operation of said road."

If the State's railroad had been leased to a Georgia corporation, then the road would have been operated as the "Western & Atlantic Railroad," and in that event perhaps the servants of the lessee, when they went on the tracks of the Western & Atlantic Railroad, would have become the servants of the Western & Atlantic Railroad, as the same corporation was operating both railroads.  As it is, however, the State's railroad is not operated by any other lessee than the Western & Atlantic Railroad Company.  It is operated by a

distinct and separate corporation, and not by a lessee. The language of the judge, in his charge, implies some outside lessee operating the road when it enters upon the tracks of the Western & Atlantic Railroad, and is not applicable to the status of an entirely new and distinct corporation itself operating the road. There can be no more reason to say that the crew of the Nashville, Chattanooga & St. Louis Railway, when they got over on the tracks of the Western & Atlantic Railroad, became thereby the servants of the Western & Atlantic Railroad Company, than to say that when a crew of the Southern Railway, or the crew of any other railroad, come upon the tracks of the Western & Atlantic Railroad to make delivery of cars at a terminal station, they become the servants of the Western & Atlantic Railroad Company.

The charge of the court complained of in the 6th ground of the motion for a new trial, as to the shock or jolt of the train, was error, the judge having left out the word "unusual" in that connection; and although the court had previously charged the correct law on this subject, the incorrect instructions in this part of the charge were, to say the least, misleading and confusing to the jury.

The court erred in refusing to give the requested instructions set out in the 5th ground of the motion for a new trial, which were as follows: "If you find from the evidence in this case that the plaintiff was injured, but that the injury which he sustained was because of negligence on the part of an employee or employees of the Nashville, Chattanooga & St. Louis Railway and before the train in a car of which plaintiff was riding had been turned over to and taken charge of by employees of the Western & Atlantic Railroad Company, your verdict should be for the defendant. The petition in this case being against the Western & Atlantic Railroad Company for injuries alleged to have been inflicted by its negligence, plaintiff can not recover if it appears that he was injured by reason of the negligence of an employee or employees of the Nashville, Chattanooga & St. Louis Railway, while connecting or trying to connect the train on which plaintiff was riding with another car which was to become a part of said train, in the depot used in common by the said two railroad companies, though actually on a track of the Western & Atlantic Railroad Company." The requested charge

was a correct statement of the law, and was applicable to the facts in the case.

The court erred in overruling the motion for a new trial.

*Judgment reversed. Russell, C. J., dissents.*

ON REHEARING.

BROYLES, J.   After the grant of a motion for a rehearing, and after a careful consideration of the case on rehearing, the court adheres to its original decision.            *Russell, C. J., dissents.*