NASHVILLE, CHATTANOOGA AND ST. LOUIS RAILWAY *v.* ROBERT Y. FARIS, ADMINISTRATOR OF THE ESTATE OF T. J. CATE.

(*Nashville,* December Term, 1932.)

Opinion filed May 23, 1933.

BROWN & SPURLOCK, for plaintiff in error.

W. T. MURRAY and FRENCH GRUBB, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The declaration alleges that T. J. Cate was wrongfully and negligently struck by one of the Railway's trains at the Wilson Street crossing in Chattanooga, inflicting injuries from which he died. There was a verdict for $8,000, which was approved by the trial court and affirmed by the Court of Appeals.

Wilson Street crosses three tracks at grade at the place where the accident occurred. The east track is owned by the State of Georgia and leased to the Western and Atlantic Railroad, a Georgia corporation. The middle track is owned by the Cincinnati, New Orleans and Texas Pacific Railway, and the west track by the Southern Railway. There is considerable confusion in the record as to directions, but for practical purposes it is sufficient to state that the train known as the "Dixie Flyer," which is alleged to have struck Cate, was proceeding from Atlanta on the east track north towards the Union Station in Chattanooga, which is three miles

from the Wilson Street crossing. The accident occurred shortly after noon on May 13, 1927.

A great preponderance of the testimony, as well as the physical facts and the nature of the wound inflicted upon deceased, indicate that he was not struck by the Dixie Flyer but was injured when trying to get on a Cincinnati, New Orleans and Texas Pacific Railway freight train traveling on the middle track, in a southern direction, and headed towards Cincinnati. Frank Ray, however, a brother-in-law of deceased, who was with him when he was injured, testified that he saw the Dixie Flyer strike deceased, and the jury accepted his testimony.

The Railway insists that the train was being operated by the Western and Atlantic Railroad, and hence the administrator has sued the wrong corporation.

The uncontroverted facts are that some time in the thirties the State of Georgia constructed a line of railroad between Atlanta and Chattanooga, which the legislature of that state designated as the Western and Atlantic Railroad. Several miles of the road were constructed within the State of Tennessee by license of the legislature of the latter state, chapter 221, Acts 1837-38. About the same time the Nashville, Chattanooga and St. Louis Railway was incorporated under the laws of Tennessee, and constructed its road from Nashville to Chattanooga. The Union Station on Ninth Street is the terminus of the two roads. In 1889 the latter road was desirous of leasing the former, and the State of Georgia, by enactment of the legislature, appointed a commission to lease said road, the provision of the statute here involved being as follows:

". . . the persons, associations or corporations accepted as lessees under this act, if not already a corpora-

tion created under the law of Georgia, shall, from the time of such acceptance, and until after the final adjustment of all matters springing out of this lease contract, become a body politic and corporate under the laws of this state, under the name and style of the Western & Atlantic Railroad Company, which body corporate shall be operated only from the time of their taking possession of said road as lessees; and it shall have the power to sue and be sued, on all contracts made by said company, in any county through which the road runs, after the execution of said lease, or for any cause of action which may accrue to said company, and to which it may become liable. After said lease is executed, it shall have power to make all rules, by laws and regulations for the government of said company, and for the working and management of said road, which are not in conflict with the constitution and laws of this state or the United States. The principal office and place of business of said company shall be in this state: provided, that nothing in this act shall be construed as an amendment of the charter of any corporation which may lease said road: provided further, that if said lessee is a corporation already incorporated under the laws of Georgia, it shall operate said railroad as the 'Western & Atlantic Railroad,' and such lessee may be sued on any contract or cause of action arising out of said lease for the operation of said road, in any county through which said road runs.''

Under this enactment the road was leased to the Nashville, Chattanooga & St. Louis Railway for fifty years. In 1915 the Legislature of Georgia, by statute, again appointed a commission to lease said road, the provision

quoted above being incorporated therein, and the lease was renewed for another fifty years in 1919.

In *Gerling* v. *Baltimore & O. R. Co.,* 151 U. S., 673, 38 L. ed., 311, it was held that a railroad corporation created by the laws of one state may carry on business in another either by virtue of being created a corporation by the laws of the latter state also, or by virtue of a license, permission, or authority, granted by the laws of the latter state to act in that state under its charter from the former state. That in the first alternative it cannot remove into the Circuit Court of the United States a suit brought against it in a court of the latter state by a citizen of that state, because it is a citizen of the same state with him. In the second alternative, it can remove a suit, because it is a citizen of a different state from the plaintiff. Most likely the statute requiring the lessee to become a domestic corporation under the name of the Western and Atlantic Railroad was passed for the purpose of preventing the removal of cases to the Federal Court, and also in order that the identity of its road might be maintained.

The Western and Atlantic Railroad has an office in Atlanta, has a superintendent, separate and distinct from the superintendent of the Nashville, Chattanooga & St. Louis Railway, who employs the operators of trains running between Atlanta and Chattanooga, and a crew of the Western and Atlantic Railroad was operating the train that is alleged to have struck deceased. When a through train, like the ''Dixie Flyer,'' reaches the Union Station at Chattanooga from Atlanta, the Western and Atlantic Railroad crew turn the train over to a crew of the Nashville, Chattanooga & St. Louis Railway, and *vice*

*versa* when such a train reaches said Union Station from Nashville.

The Court of Appeals, in their opinion, said:

"After a careful review of the authorities and the briefs filed in this case, we agree with the Georgia courts that the act creates a new corporation of the lessee, and that the new corporation is liable for its torts, but we do not assent to the proposition that the original lessee is not liable. The moment the lease is consummated the lessee Nashville, Chattanooga & St. Louis Railway becomes in name the Western & Atlantic Railroad in the operation of that railroad, and all of its acts under said lease are done in the name of the new corporation, the Western & Atlantic Railroad Company, but that should not release the lessee Nashville, Chattanooga & St. Louis Railway Company from liability for torts committed by it as lessee under another name."

After referring to the fact that the Nashville, Chattanooga and St. Louis Railway controls the Western and Atlantic Railroad; that they have the same officers; that the employes of the Western and Atlantic receive their pay checks from the treasurer of the Nashville, Chattanooga & St. Louis Railway; and that the Western and Atlantic Railroad is designated by the Nashville, Chattanooga & St. Louis Railway as a part of its system, the Court of Appeals announces their conclusions as follows:

"In view of the foregoing facts it would be absurd to say the Western & Atlantic Railroad is not owned, controlled and operated by the Nashville, Chattanooga & St. Louis Railway, and that it is not a mere tool in the hands of the latter company."

We agree with this conclusion if, as a matter of law, the Western and Atlantic Railroad is a mere tool of the

Nashville, Chattanooga & St. Louis Railway, as that word is defined in the cases dealing with the question here involved.

No principle of law is better settled than that which holds that where a corporation resorts to the subterfuge of creating a "dummy" corporation to be used as its agency or instrumentality for the purpose of avoiding liability or furthering its illegal designs they will be treated as one and the same. *McDonald, Shea & Co.* v. *Railroad,* 93 Tenn., 281; *Towles & Co.* v. *Miles,* 131 Tenn., 79; *Madison Trust Co.* v. *Stahlman,* 134 Tenn., 402; *Dillard & Coffin Co.* v. *Cotton Oil Co.,* 140 Tenn., 290; *Chicago, M. & St. P. R. Co.* v. *Minneapolis C. & C. Asso.,* 247 U. S., 490, 62 L. ed., 1229. But in *Towles & Co.* v. *Miles, supra,* this court said: "A corporation will be treated as a distinct legal entity, ordinarily, and untill proof is adduced to the contrary. But that notion will not prevail when the result would be to give countenance and effect to a mere sham and work injustice."

That the Nashville, Chattanooga & St. Louis Railway is vitally interested in the Western and Atlantic Railroad, controls it, and both have the same general officers are circumstances to be considered in determining whether the one is a mere tool of the other, but are not conclusive of that fact. 51 C. J., 1089; *Chicago, M. & St. P. R. Co.* v. *Minneapolis C. & C. Asso., supra; Western & A. R. Co.* v. *Roberson,* 61 Fed., 592.

In our opinion the principle of law invoked by defendant in error has no application in a case like the one here involved. The creation of the Western and Atlantic Railroad was an independent act of the Georgia legislature which was not done at the behest or wish of the Nashville, Chattanooga and St. Louis Railway. It had

no say-so in the matter. Quite likely it would have preferred permission to operate its railroad in Georgia by license rather than by having to incorporate in that state. The State of Georgia had very good reasons for requiring the lessee of its road to become a domestic corporation. It intended that such corporation should be an independent one. There is nothing in the record, furthermore, to suggest any fraud, subterfuge, or circumvention in the creation of the Western and Atlantic corporation. No good reason has been suggested that would deprive the legislature of the right to prescribe that the lessee of its road should be an independent domestic corporation. Neither can we see how this works any wrong nor injustice to litigants. It is just as easy to sue the Western and Atlantic Railroad as it is the Nashville, Chattanooga and St. Louis Railway. The Court of Appeals, in their opinion, suggest that the Western and Atlantic Railroad is without assets, but we find no evidence to this effect in the record, and have no doubt but that a judgment against that corporation could be collected.

The only decisions to which our attention have been directed, dealing with the question of liability for personal injuries received on the Western and Atlantic road, hold that the Georgia corporation is independent of the Tennessee corporation, and that the former, and not the latter, is liable for such injuries.

*Nashville Railway Co.* v. *Edwards,* 91 Ga., 24-25, was a suit for personal injuries. After quoting the involved provision from the statute, the court said: ''When, therefore, the Nashville, Chattanooga & St. Louis Railway Company became the lessee under this act, a new corporation under the laws of Georgia was created under the name and style of the Western & Atlantic Railroad Com-

pany; and for any tort committed in the operation of its railroad, that corporation, and not the Nashville, Chattanooga & St. Louis Railway Company, is liable. In such case section 3407 of the Code does not apply, and an action against the Nashville, Chattanooga & St. Louis Railway for the tort is not maintainable, though the declaration alleges that 'the defendant operates as lessee the Western & Atlantic Railroad,' the act requiring that the Western & Atlantic Railroad Company shall be sued.''

In *Branan* v. *Nashville Railway Co.*, 119 Ga., 738, 744, the court said: ''It appearing from the evidence that the Nashville, Chattanooga & St. Louis Railway Company had leased the W. & A. Railroad from this State under the lease act of 1889, it must be true, as matter of law, that under the terms of that act the lessee at once became a body politic and corporate under the laws of Georgia, under the name and style of the 'Western & Atlantic Railroad Company,' and subject to ship in that name only. *Edwards' case,* 91 Ga., 24.''

In *Western & Atlantic Railroad* v. *Peacock,* 16 Ga. App., 772, the plaintiff was a postal clerk on a run between Nashville and Atlanta. He sued for injuries alleged to have been received in the Union Depot at Chattanooga. The proof was that at the time the plaintiff received his injuries the train was still in charge of the crew of the Nashville, Chattanooga and St. Louis Railway, which had operated it from Nashville.

In this case it was held that under the lease act itself the Western and Atlantic Railroad was created ''an entirely separate and distinct corporation from the corporation known as the Nashville, Chattanooga & St. Louis Railway;'' that the Western and Atlantic Railroad under the lease act is not different from any other rail-

road corporation, and operates the railroad leased to it as a separate and distinct corporation and not as lessee. It was therefore held that the Western and Atlantic Railroad was not liable because the train had not been transferred to its crew in Chattanooga.

*Western & A. R. Co.* v. *Roberson, supra,* was a suit to recover damages for the negligent killing of one Roberson by a passenger train on the Western and Atlantic road in Hamilton County, Tennessee. The defense interposed was that the Nashville, Chattanooga and St. Louis Railway should have been sued instead of the Western and Atlantic Railroad. The Circuit Court of Appeals, in an able and exhaustive opinion by JUSTICE LURTON, held the two corporations to be independent, approved the decision in the Edwards case, and affirmed the judgment against the Western and Atlantic Railroad. Upon these authorities we are of opinion that the Western and Atlantic Railroad should have been sued, and that the suit is not maintainable against the Nashville, Chattanooga and St. Louis Railway.

In 59 Corpus Juris 946, it is said: "Where a foreign statute has been construed by the courts of the state or country where enacted, such construction will be followed by the courts of other states, or countries, and by the federal courts."

The Supreme Court of Georgia, and the highest Federal Court before whom this question has arisen, having held that the Western and Atlantic Railroad is independent of the Nashville, Chattanooga and St. Louis Railway, and should be sued for torts committed by its employes, we feel constrained to reverse the judgment of the Court of Appeals, sustain the Railway's motion for a directed verdict, and dismiss the suit.

We might say further that the Court of Appeals, in their opinion, cited a number of cases, state and federal, to the effect that where the relationship between the dominant and subsidiary company constitutes a partnership or joint agency, the former will be liable for the acts of the servants of the latter. These cases have no application in the case under consideration.

Other questions have been raised by assignments of error, but in view of the conclusion announced above we find it unnecessary to decide them.