# *McDONALD, SHEA & CO. v. RAILROAD.

## (*Knoxville.* October 31, 1893.)

1. RAILROAD CONSTRUCTION. *Relation of railroad and construction company to latter's contractors:*

    The railroad company and its construction company are jointly liable, upon the facts stated in the Court's opinion, to persons employed by the latter to furnish labor and materials for the construction of the road. (*Post, pp. 283–288.*)

    Cases cited: 36 Fed. Rep., 815; 15 Am. & Eng. Ry. Cas., 100; 15 *Id.*, 210; 2 *Id.*, 77.

2. SAME. *Contractor's lien exists, when.*

    And, in such case, persons furnishing labor and materials under contract with the construction company for the construction of the road, have a mechanic's lien thereon as contractors of the railroad company and the construction company jointly. (*Post, pp. 283–288.*)

    Act construed: Acts 1883, Ch. 220.

3. SAME. *Same.*

    A contractor with a railroad, who has negotiated notes received in part payment of his claim, is not first required to take up such notes before obtaining a judgment and lien for his services, but the judgment may provide for their payment out of the sum allowed. (*Post, p. 289.*)

4. SAME. *No lien for superintendent's salary.*

    A superintendent of a railroad company is not entitled to a lien for his salary, although his services are rendered while the company is engaged in the construction of the railroad. (*Post, pp. 290, 291.*)

    Act construed: Acts 1883, Ch. 220.

5. SAME. *No lien for money advanced to purchase right of way.*

    One who loans money for the purpose of procuring the right of way for a railroad is not entitled to a lien upon the specific right of way, in the absence of any agreement to that effect. (*Post, pp. 291, 292.*)

* Selected for report and annotation in L. R. A.—REPORTER.

McDonald, Shea & Co. *v.* Railroad.

6. SAME. *Engineer's estimates conclusive, when.*

In an action by subcontractors to recover for services performed in the construction of a railroad, a decree based upon the final estimate of a chief engineer is proper where there was an agreement between the parties that upon all matters of difference such estimates should be conclusive. (*Post, pp. 294, 295.*)

7. JUDGMENT. *Confession of void, when.*

A confession of judgment by a railroad company to a construction company is void as against creditors of the railroad company, where the two companies are in reality but one, having the same officers and managers. (*Post, pp. 289, 290.*)

8. ATTORNEY'S LIEN. *Exists, when.*

An attorney from whom papers, which he has a right to hold against a railroad company for the payment of his fees and for money loaned by him, have been taken under orders and decrees of the Court, thereby swelling the funds for the payment of creditors of the railroad company, is entitled to be paid, out of the funds realized from the sale of the road, the debts for which such papers were held. (*Post, pp. 291–294.*)

Case cited: 3 Tenn. Ch., 621.

9. ATTACHMENT LIEN. *Does not attach to property in custodia legis, when.*

No lien is acquired under an attachment made after the Court has taken charge of the attached property, although its receiver has not taken actual manual caption thereof. (*Post, pp. 290, 291.*)

---

FROM WASHINGTON.

---

Appeal from Chancery Court of Washington County. JNO. P. SMITH, Ch.

WEBB & McCLUNG, LUCKEY & SANFORD, and TURLEY & WRIGHT for Complainants.

CARR, REEVES & JENNINGS, REEVES & BAXTER, KIRKPATRICK & WILLIAMS, and INGERSOLL & PEYTON for Respondents.

WILKES, J.   The complainants are railroad contractors, and constructed the Charleston, Cincinnati and Chicago Railroad across the State of Tennessee, and some portions of the line beyond the limits of the State.   They made their contract for construction with the Massachusetts and Southern Construction Company.   The latter is incorporated under the laws of Massachusetts, to construct railroads, and specially this line of road, and had a capital stock of $250,000.

Complainants filed their bill to have a lien declared in their favor upon the line of railroad constructed by them in Tennessee, and to have the amount of their debt against the construction company declared, and its payment enforced by a sale of the railroad.

The railroad company entered into an informal contract with the construction company to build its line of railroad from Charleston, S. C., to the Ohio River, and agreed to pay it for such construction in its own bonds and stocks, at the rate originally of $20,000 per mile of bonds and a like amount of stock, which, by a subsequent agreement, was increased to $25,000 per mile of each, the contemplated cost of the road being $20,000,-000.   The work in Tennessee was done by complainants, and they insist that, under the Acts of

1883, and other Acts, they are entitled to liens, as contractors and mechanics, upon so much of the road as is within the limits of the State.

Bonds and stock of the road were issued to an amount exceeding seven millions of dollars, and a mortgage was executed upon the road and its property to the Boston Safe Deposit and Trust Company, to secure the payment of such bonds. Both the railroad and construction company became insolvent, and, under the various pleadings, bills, cross-bills, answers, etc., filed in this cause, the rights of all the persons interested in both companies, so far as their assets in Tennessee were concerned, were submitted to the Court, and passed upon as under a general insolvent proceeding.

Upon hearing of the consolidated causes, the Chancellor, among other things, not necessary now to mention, decreed—

*First.*—That the two companies were insolvent, and must be wound up as such.

*Second.*—That the mortgage executed upon the railroad in Tennessee, to secure the bondholders, was invalid for want of authority in the parties who attempted to execute the same.

*Third.*—That the contracts made by complainants to construct the road were virtually contracts with the construction company and railroad company as one and the same person, and that complainants were entitled to a lien upon the road in Tennessee to secure the amounts due them, which

amounts were declared, subject, however, to be modified as subsequent facts might warrant.

*Fourth.*—That a confessed judgment rendered in favor of the construction company against the railroad company during the pendency of the insolvent proceeding for the sum of $715,841.74, was not valid as against the creditors of the railroad company.

The road was brought to sale, so far as it lay within the limits of the State, realizing about $200,000, which was under the control of the Court below, and was ordered to be paid out as follows:

1. To taxes on the property.

2. To costs and expenses of the receivership.

3. To amounts due for rights of way.

4. Pro rata among the various lien creditors of equal dignity with the liens of complainants.

Neither the railroad company, nor the Boston Safe Deposit and Trust Company, nor the bondholders appealed, and it appears that the bondholders, through a re-organization committee, are now the owners by assignment of the complainants' claims.

The construction company appealed, and insists that the Chancellor erred in holding that it and the railroad company were virtually one and the same, and that the contracts made by complainants are contracts with each as principals; its contention being that it, the construction company, was the principal contractor, and complainants but sub-

contractors under it, and only entitled to such rights as subcontractors would be entitled to under the laws of Tennessee.

It appears that the construction company was organized before the railroad company, and mainly for the purpose of constructing this road; that it planned, originated, and organized the railroad company, controlled its stockholders, dictated its board of directors, took its stock and bonds and floated them, thereby raising its only assets; that it expended the entire revenues of the railroad company; that the same president dictated, dominated, and controlled the affairs and operations of both companies; that the general manager, treasurer, auditor, and every other active officer was the same person in each company at the same time.

The informal contract entered into between the railroad company and the construction company contained no details, no specifications as to grades, curvatures, character or kind of rails, nor the class or kind of road to be built, except simply that it was to be a road of standard gauge, four feet eight and one-half inches wide.

The original contract provided that the construction company should have $20,000 of bonds, and a like amount of stock, for every mile of road constructed, but after a short time this agreement was changed to $25,000 per mile of each, and no reason whatever is shown for the increase, which was made to apply as well to the portion

of the road already constructed as to that part yet to be built.

The railroad company, though organized in 1886, had no books until 1889, it had no assets except its own stock and bonds, and these were issued to the construction company alone, and attempted to be floated by it. The subsidies granted by cities or towns were transferred by the railroad company to the construction company, and the railroad company never had a dollar, except that raised by and through the construction company, and performed no corporate acts, except to make the contract with the construction company, if it can be called a contract, and to execute mortgages, issue its stock and bonds, and make contracts connected· therewith, and to make consolidation agreements of its lines. We fail to find, in any of the transactions between. the two companies, any evidence of independent dealing at arms' length with each other, but there is at most only the semblance of separate action, the relation between the two being even closer than that of principal and agent, and more nearly representing two persons. acting as one in the prosecution of a common enterprise..

The conclusion is irresistible that the two companies were really one and the same, and contracts made with the construction company were in fact and legal effect made with the railroad company; that the construction company was but the mere arm or agency by which the railroad company built the road and floated its stocks and bonds,,

and that the railroad company. was but the means through which the construction company was enabled to put into effect its schemes for making money; and they cannot be considered as separate, independent organizations in such a sense as to cut off the rights of parties who have given their labor, services, and material to the construction of the road. We are of opinion that, as to complainants, they each stood in the relation of principal, and as against the roadway, which has been constructed by them and brought into existence through their efforts, they have a lien under the Act of March 29, 1883, and other acts of the State relating to liens of contractors and mechanics. As illustrating our holding, we refer to the cases of *Thomas* v. *The Peoria & R. I. Ry. Co.*, 36 Fed. Rep., 815; *Hughes* v. *The Cincinnati & Springfield Ry. Co.*, 15 Am. & Eng. Ry. Cases, 100; *Solomon R. R. Co.* v. *Jones*, 15 Am. & Eng. Ry. Cases, 201; *Speed* v. *Atlantic & Pacific Ry. Co.*, 2 Am. & Eng. Ry. Cases, 77. The confessed judgment for $715,000 is another evidence of identity between the two companies.

We think there is no error in the amount found due complainants on construction account, except an item of $4,000 interest improperly charged, and the decree of McDonald, Shea & Co., for $441,094.43, is affirmed, with that correction.

Under the contract between the parties, the amount due was to be left to the estimates of the chief engineer, and the Court has adopted his es-

McDonald, Shea & Co. *v.* Railroad.

timates, adding thereto the amount of the "fence accounts" and extra bills shown in the testimony of Englesing, the book-keeper for complainants.

It is insisted that complainants should have no lien upon that part of the road in Tennessee for labor done and material furnished on the line of the road beyond the limits of the State. We need not pass upon this question directly, as there are no persons before the Court upon the appeal who stand in position to make the contest.

It appears that, during the progress of the work, the construction company, being unable to pay cash for work done, executed some $148,000 in notes to complainants, which they negotiated, after indorsing them, and they are still outstanding, and complainants' liability thereon has been fixed by protest. The Court below properly decreed that these notes should be paid out of complainants' recovery, as well as $20,000 of similar notes floated by Complainant Kenefick under similar circumstances; and that, upon payment of such notes, the holders should deliver up such collaterals as they hold to secure said notes. It was not proper to require complainants to first take up these notes and deliver them up before they could recover upon their original claim, and thus provide a fund for the payment of such notes.

It results, from our view of the case, that the decree of the Court below, holding that the judgment in favor of the construction company against the railroad company was void as against creditors,

is correct. This necessarily follows from our hold-
ing that they are virtually one and the same; and,
while the judgment may be treated as valid for
the purpose of fixing the status of accounts be-
tween the two companies, it cannot affect the
rights of third persons.

Other exceptions are taken by the construction
company, but they are too indefinite to require ex-
amination. We cannot search this immense trans-
cript of ten volumes, containing 4,500 pages o
closely type-written matter, to ferret out these ex-
ceptions as made. We are satisfied they present
no questions not already passed upon.

*The petition of W. P. Harris.*—W. P. Harris
claims debts against the two companies, which are
conceded as follows: One debt of $3,734.40 against
the construction company and one of $1,026.62
against the railroad company for salary account as
general superintendent of the railroad company and
superintendent of construction of the construction
company, also a debt of $2,601.50 against both
companies on account of funds advanced to pay
for rights of way and other matters arising in the
construction of the road.

We are of opinion, that as to the two items
of salary account, the Chancellor was correct in
holding that no lien attached to the property of
the railroad or construction company. Petitioner
cannot be considered as a mechanic, contractor, or
subcontractor in the sense of our statutes. He
was simply an officer or employe of the two com-

panies at a salary, and while it is true his services were rendered the companies while they were engaged in the construction of the road, this would not give him any lien therefor any more than a lien would exist in favor of any other officer or employe of the companies during the same time. Nor did the petitioner acquire any lien upon the road-bed and way and fixtures by virtue of his attachment, since this attachment was made after the Court had taken charge of the property to administer it under this proceeding, although actual manual caption had not been taken of it by the receiver.

The item of $2,601.50 for money advanced stands upon peculiar grounds, and will be considered in connection with the claims set up under the petition of H. H. Carr.

*Petition of H. H. Carr.*—H. H. Carr claims to be a creditor of the two companies to the amount of $4,760, and this amount was found due him in the Court below, but the Chancellor held that he was entitled to no lien against the property or funds in the cause for its payment.

It appears that Carr was the general attorney for the two companies in Tennessee, and, while acting as such, they became indebted to him in the amount stated for legal services rendered by him, for amounts advanced by him to pay for rights of way, and for costs advanced by him in suits in which he was surety for the companies.

At the institution of this suit he had under his

control, and in his possession, a large number of title-papers and other papers of value and importance to the two companies, and he claimed the right to hold these papers until the amount owing him for fees and moneys advanced were repaid to him. He also claimed the right to be subrogated to the rights of persons from whom rights of way had been procured, and to have a lien declared upon the rights of way for money expended in procuring the same. This latter claim of lien was not sustained by the Court, but refused, and we think properly, as the petitioner would not be entitled to a lien upon the specific rights of way in the absence of any agreement to that effect, if at all.

It appears, however, that these deeds and other title-papers, and other papers of value, had been placed in the hands of a third person, under an agreement with the president of the companies that they should be held until the amount due Carr should be paid, as well as the amounts advanced by W. P. Harris, as before stated. The Court, seeing that the delivery of these papers into its custody was necessary in order to bring the property to sale free of incumbrance, made an order directing the delivery of these papers into the custody of the Court, and, after evading the order for some time, under a penalty of fine and contempt of Court, the papers were surrendered to the Court. This was done, however, as stated in the order for delivery, without prejudice to the

rights and liens of Harris and Carr, if they had any by virtue of the custody of the papers. It was certainly proper that the delivery of these papers into the custody of the Court should be required and enforced, as thereby the titles to the rights of way were perfected, and the road brought to sale in such way as to insure its fair price, and thus augment the fund realized for the benefit of creditors, and their delivery thus inured to enhance the fund for the creditors.

But the question remains as to the rights of Carr and Harris under these facts. The law is that an attorney, in the absence of any contract to that effect, has a general or retaining lien for a general balance due him arising out of his professional employment, upon all papers of his client which came into his possession in the course of his professional employment. This lien is one in which there is no right of sale. The attorney simply can detain the papers from his client, and the lien is valuable to the extent the papers are necessary and indispensable to the client, or, as stated in some of the cases, to the extent the client can be worried thereby. It is a lien which cannot be actively enforced, and amounts simply to a mere right to retain the papers until a settlement and payment is made. *Brown* v. *Reid &amp; Bigby*, 3 Tenn. Ch., 621; 13 Am. &amp; Eng. Enc. Law, 615, and authorities there cited.

We are of opinion that Carr, under his lien as attorney, and both Carr and Harris, under the

agreement made with the president of the two companies, had a right to hold these papers against the. companies and the creditors of the companies; and, having been compelled to surrender them under the orders and decrees of the Court, and such surrender having inured to the benefit of the creditors in swelling the funds for their payment, they are entitled, out of the funds realized from the sale of the road, to be paid their debts for which the papers were thus held, and they should be paid in full, next in order after the payment of the right of way claimants.

*Petition of C. C. Devault.*—We think there is no error in the decree of the Chancellor, denying to petitioner the amount claimed by him for damages to his land by the right of way of the road. We think his claim is barred by the statute of limitations, and, under the orders of the Court, was not filed in time, and, in addition, he has wholly failed to show title and ownership of the land over which the right of way was taken. His petition will be dismissed, but no costs are adjudged against him.

*Petition of Jno. Hasson & Co.*—Petitioners were subcontractors under McDonald, Shea & Co., and the only matter of controversy with them is as to the amount due them from the principal contractors. They claim a balance of $25,000, while the Chancellor allowed them only $10,719.43.

We think the Chancellor was in error to the extent of not allowing them their accounts for

·extra work, etc., amounting to $3,245, and his de-cree will be modified accordingly. We think as to the other items the decree of the Chancellor is correct, the agreement between the parties being that, upon all matters of difference, the final estimates of the chief engineer shall be conclusive, and the decree of the Chancellor is based upon this final estimate of the chief engineer.

The cost of this petition in this Court will be divided equally between McDonald, Shea & Co. and Hasson & Co., and of the Court below will be paid as adjudged by the Chancellor. The costs of the appeal will be paid one-half by the construction company and the other half out of the funds under the control of the Court below. The costs of the Court below will be paid as adjudged by the Chancellor.

The decree of the Chancellor will be modified as herein indicated, and, except as modified, will, in all other respects, be affirmed, and the cause is remanded, to be further proceeded in.