## JOHN N. ACUFF v. J. ALBERT ROBBINS CO., et al.

Eastern Section.   February 11, 1926.

Certiorari denied by Supreme Court.   April 10, 1926.

1. **Payment.**   **Intent governs whether the giving of a new note acts as a payment.**

   Where a new note is given to take up a prior note it may or may not extinguish the original according to the intent of the parties.

2. **Payment.**   **Evidence held to show payment of prior note by giving of a second note.**

   In an action by a bank to apply the funds on deposit of an insolvent corporation against its note where the original note had been taken up by another corporation, **held** that the acts of the parties upon the taking up of the original note showed an intent to pay it.

3. **Corporations.**   **Dominating corporation is liable for debts of its dummy.**

   Where a corporation organized a dummy corporation for the purpose of carrying on a part of its business the dominating corporation is liable for the debts of the dummy and its separate legal identity can be disregarded where the ends of justice require it.

4. **Corporations.**   **Creditors of parent corporation not entitled to set aside legal identity of dummy when it ˙will defeat bona-fide creditors of dummy.**

   In an action to hold the assets of a *dummy corporation to satisfy* debts of the dominant corporation on the theory that the dummy corporation should be disregarded, **held** the rule cannot be invoked by the creditors of the *dominant corporation to the detriment of bona fide creditors of the dummy.*

5. **Equity.**   **Between equal equities the law will prevail.**

   In an action by a bank to disregard the legal identity of a dummy corporation, and subject its assets to the payment of debts of the dominant corporation where the debtors of the dummy would be defeated by such action **held** that debtors of dummy corporation entitled to its assets and equity will not interfere, but will leave the parties to their legal remedies.

Appeal from Chancery Court, Knox County; Hon. Chas. Hays Brown, Chancellor.

Affirmed.

Webb, Baker and Egerton, of Knoxville, for appellant.

Bowen and Bowen, of Knoxville, for appellee.

PORTRUM, J.   J. Albert Robbins was for a number of years engaged as an insurance agent and realtor carrying on an extensive business in Knoxville and Knox county. He found that a personal operation of the business hampered him, so he organized the Knoxville Trust Company, in September, 1921, and carried on his real estate and loan business through this corporation, retaining his insurance business for a while. The insurance business was

profitable. He held the agency with the right to write insurance for many responsible insurance companies, and this agency was a thing of value. He decided to sell his insurance business to the Knoxville Trust Company, of which he was the president and controlling spirit, and the sale took place about January the 1st, 1923, the consideration passing from the trust company to Robbins was $3500. About three months after this transfer the Knoxville Trust Company discovered it could not legally carry on an insurance business and in April, 1923, it promoted and organized a corporation to carry on this insurance business under the style of J. Albert Robbins Company, Inc., and after the organization the trust company transferred to the new company the assets and business purchased by it from J. Albert Robbins, and in consideration of the same the trust company received all the capital stock of the new company. The purpose of the organization of the J. Albert Robbins Company, which will hereafter be referred to as the Robbins Company, was to provide a legal way for the trust company to carry on an insurance business, the trust company purchasing all the stock, whether or not this purpose was accomplished it is not necessary to decide, as no ultra vires act of the corporation is at issue and involved in this law suit. The officers and directors of both corporations were the same until October the first, 1923, when Mr. John N. Acuff was engaged as manager of the Robbins Company. No other changes were made.

On December 3, 1923, the Robbins Company borrowed from the Holston National Bank the sum of $2500, which money was credited to the account of Robbins Company, and used by it. The note was renewed from time to time until September 27, 1924. On this date, which was the date of maturity, Mr. Robbins, president and active head of both the companies, was called into conference by Mr. Gaut, president of the Holston National Bank, who knew nothing of the original loans and wanted to make inquiry of the Robbins Company. At the conference Mr. Robbins told Mr. Gaut the facts as here detailed with reference to the purpose and organization of the Robbins Company, stating the Robbins Company was in reality the trust company. Mr. Gaut then said:

"I asked him then, 'Why does not the Knoxville Trust Company borrow this money, why does the J. Albert Robbins Company put in its note?' 'Well,' Mr. Robbins said, 'it was only for convenience, just to keep the two accounts separate.' Mr. Gaut said: 'What objection is there to the Knoxville Trust Company giving its note?' Robbins said, 'Absolutely none.' Mr. Gaut then said, 'I said I would renew it if he would make it that way, and he said he would. Now, about the bookkeeping in regard to changing from the J. Albert Robbins Company

to the Knoxville Trust Company, I had no concern with that, but he said it was all one and the same thing.' ''

When this was agreed upon the trust company, through its president, executed its notes for a loan of $2500, drew a check on its account and paid the Robbins Company note, at the same time making an entry on the books of the trust company of a charge or loan against the Robbins Company and in favor of the trust company, and also receiving as evidence of said loan the note of the Robbins Company, executed by its president for a like sum, which note it carried as an asset.

The notes were to run ninety days, and before the expiration of this time both the Knoxville Trust Company and the J. Albert Robbins Company failed and each was in the hands of a receiver. At the date of the failure of the Robbins Company it had on deposit in the Holston National Bank $1,117.55. The receiver of the Robbins Company drew a check in the name of the company and in favor of himself for this fund and re-deposited it in the same bank to his account as receiver. A few days thereafter the bank made an entry on its books charging the receiver with the said sum of $1,117.55 and re-entering it in the name of the Robbins Company, and asserting the right of the bank to set it off and apply it against the $2500 note executed by the trust company under the circumstances above mentioned. The affairs of the Robbins Company were being wound up in the chancery court of Knox county under its officer, the receiver, and the Holston National Bank filed a petition in the cause setting out the above facts and asserting the right to appropriate the aforesaid sum. Issue was made and the case was heard upon this branch when the chancellor dismissed the petition and the bank has appealed to this court. The assets of the J. Albert Robbins Company are insufficient to pay its creditors in full.

As we understand this case there are two primary questions made on behalf of the petitioner, under either of which if true it seeks to appropriate this fund; they are stated as follows:

1. Was the execution of the note by the trust company a payment of the note of like amount of the Robbins Company? If not a payment the bank is entitled to apply the funds of the Robbins Company as a payment on the Robbins Company's indebtedness to it.

2. Is the Robbins Company a "dummy" corporation, dominated and controlled by the trust company, thereby making the trust company liable for the debts and obligations of the Robbins Company, and if so, does it then follow that the assets and funds of the Robbins Company are the assets and funds of the trust company and subject to be set off against the debts of the trust company?

The receiver, replying to the first proposition above, states that the execution of the new note by the trust company and the payment by it of the Robbins Company's note, and the execution by the Robbins Company of a note of like amount to the trust company was in law a payment in satisfaction of the Robbins Company note held by the bank, and was so intended. And further, if this were not the case then, when the bank honored the check of the receiver, drawn in his favor, on the Robbins Company's funds and credited the said funds to the account of the receiver the bank then lost the right to make the application a set-off, the funds having passed into the custody of the court, and the mistake in payment being a mistake of law and not of fact.

In answer to the second proposition he states that the creditors of the Robbins Company stand upon higher grounds and possess greater equities than the bank, and a court of equity will not invoke its aid in behalf of the bank to the detriment of the Robbins Company's creditors.

The rule of law applicable to the execution of a note in lieu of a prior obligation and the discharge of said obligation is stated as follows:

"Whether the discount of a note by a bank be in renewal of a prior note or an original transaction, depends upon the intention of the parties, to be gathered from the circumstances of the discount and the previous dealings of the parties." Gates v. Union Bank, 12 Heisk., 325.

"That the taking of a promissory note of a debtor does not extinguish the original debt, nor operate as a payment, unless so intended or agreed between the parties, though it may extend the time of payment, and if for any reason without fraud the creditor loses his right to sue on the note, he is at liberty to sue on the original indebtedness. 2 Cyc., 183, citing Otto v. Halff, 89 Tex., 384, 34 S. W., 910, 59 Am. St. Rep., 56, and notes, and many other authorities." Grocery Co. v Marshall, 131 Tenn., 275.

The inquiry then is, what was the intention of the parties to be gathered from their statements and conduct? "Acts indicate the intention." The president of the bank, when informed fully of the purpose of the insurance corporation, declined to extend it further credit. The credit of the trust company, in his opinion, was good and he was willing to loan the money to the trust company, and did so. The trust company made a like loan to the Robbins Company and received the Robbins Company's note which it held as an asset and may have discounted or transferred to a third party. This conduct is inconsistent with an intention not to satisfy the original note. If the proceeds of the trust company's note were not

intended as a payment of the Robbins Company's note, then as a result of the. acts of the party the Robbins Company was. liable for two debts of $2500, instead of one. Its president was partic-ipating and could not have intended to create two obligations. The president of the trust company was the same person. The bank knew the facts and while it said, through its president, it had noth-ing to do with the entries on the trust company's books and the execution of a 'Robbins Company's note to the trust company, yet it does not say it was ignorant of the facts nor did not know Mr. Robbins' intention; the facts indicate it had this knowledge. It declined to extend credit to the Robbins Company and should not thereafter be permitted to say that it did extend credit. It did not receive the note of the trust' company in payment for the note of the Robbins Company, but received a check representing a cash transaction. The court cannot say, because no actual money passed, that these checks could be absolutely disregarded and held for nothing, checks in the business world represent cash items and should ordinarily be treated as cash by the court ,when no equitable principle is violated. In this case they indicate an intention to satisfy the debt of the Robbins Company, and we hold that the note of the Robbins Company was paid and discharged. The Rob-bins Company is indebted upon its note to the trust company and not upon the note to the bank, and it is liable for only one sum of $2500.

This holding makes it unnecessary to pass upon the right of the bank to transfer the funds from the account of the receiver back to the account of the Robbins Company.

There are no grounds for doubt but that the J. Albert Robbins Company was a ''dummy'' corporation, within the sense of our laws, owned, managed and controlled by the Knoxville Trust Com-pany. This makes the rule as defined by Judge Lansden applicable:

"'It is said in defense that this transaction was illegal and ultra vires the powers of the Richmond. However this may be, we do not consider it important to decide. The fact remains that the Planters' was completely dominated and controlled by the Richmond. It was so understood both by the Richmond and by the Planters.' They intimate that the promoter's agree-ment between the Richmond and Sugg necessarily involves the control and operation of the Planters' when organized by the Richmond. It is well-settled law in this State that when such a state of facts exists, the dominating corporation is liable for the debts of its dummy. Towles & Co. v. Miles, 131 Tenn., 79, 173 S. W., 439; McDonald, Chea v. R. R., 93 Tenn., 281; Madison Trust Co.. v. Stahlman, 134 Tenn., 402.

''. . . We think the Planters' Gin Company was organized by the Richmond Company for its own business convenience,

and its separate legal identity can be disregarded when the ends of justice require it." Dillard & Coffin Co. v. Cotton Oil Co., 140 Tenn., 295-302.

It is not necessary to review the facts in the cases relied upon by the appellant, which are the same cases cited by Judge Lansden in the above excerpt. The rule based upon these cases is stated above and the inquiry remaining for this court in this case is to apply the facts arising and determine whether or not the separate legal identity of the two corporations, viz. the trust company and the Robbins Company, shall be disregarded, as a matter of equity, because the ends of justice require it. If the legal identity of the two is disregarded, that is merged, then the obligations and assets of the dummy corporation become the obligations and assets of the parent corporation. This being true, the appellant would have the right to apply or set-off the funds in its hands against the obligations of the parent corporation, and this is what it is seeking to do.

It may be stated that the cases above cited involve contests between creditors of the dummy corporation and the parent corporation. We have no case where the creditors of the parent corporation have invoked this doctrine to the detriment of the creditors of the dummy corporation; this is the question in the instant case.

We are of the opinion that the equities of the creditors of the Robbins Company are equal if not superior to the equity of the appellant's claim. If right in this conclusion, then the maxim, "Between Equal Equities the Law Will Prevail." The complainant recognizes that a court of equity must break down, for it, the legal entities of the corporations before it can obtain relief. When the equities are equal the court will not lend its aid for this purpose. "Indeed, it may be generally said that a court of chancery in enforcing a legal right, or in applying a legal remedy, will follow the law when no fundamental rule of equity is thereby violated." If the court should exercise its equitable jurisdiction and aid the appellant, then the result would be only to rob Peter to pay Paul. The act would violate the homely principle of taking money out of one pocket, which is accessible to one class of creditors and putting it into another pocket which is accessible to another creditor but unaccessible to the first class of creditors. The Robbins creditors gave credit to and relied upon the credit of the Robbins corporation, the appellant gave credit to and relied upon the credit of the trust company. The Robbins Company creditors knew nothing of the affairs of the two companies, and in law had a right to believe that all the assets of the Robbins Company were first liable to the payment of their debts. We believe in this case "equity follows the law."

The assignments of error are all overruled and the lower court is affirmed at the cost of the appellant and its bondsman.

Snodgrass and Thompson, JJ., concur.