TENNESSEE CONSOL. COAL CO. v. HOME ICE & COAL CO. et al.—156 S. W. (2d), 454.

Middle Section. April 19, 1941.

Rehearing denied May 10, 1941.

Petition for Certiorari denied by Supreme Court, December 13, 1941.

K. Harlan Dodson, Jr., and Walker & Hooker, all of Nashville, for appellant.

Cochran & White, of Nashville, for appellee.

FELTS, J. This is a general creditors' proceeding in which the affairs of the Home Ice and Coal Company, a Tennessee corporation, are being administered. The Chancellor subordinated the claim of the Independent Life Insurance Company to the claims of all the other creditors, upon the ground that the Home Ice and Coal Company was a subsidiary of the Independent and was so dominated by it as to be merely its "agency or instrumentality" in carrying on part of its own business.

The Independent, now represented by its successor in interest, the Standard Life Insurance Company of the South, acquiesced as to all the claims except the claim of Paul Roberts, but appealed from the preference of his claim, because at the time it accrued he was himself president of the Independent and knew and approved the relationship between the two corporations. He also appealed because he was not allowed interest on his claim.

He was president of the Independent from its organization in 1908 until February 10, 1934, when the Chancery Court of Davidson County placed Mr. Joseph S. Tobin, Commissioner of Insurance and Banking, in charge of the Independent as conservator. In that proceeding the Standard Life Insurance Company of the South took over the Independent's assets and liabilities, and now asserts its claim in this proceeding.

In 1924 or 1925 the Independent made loans on certain real estate in Nashville which was owned by a Mr. Fox and used by him in carrying on an ice and coal business. He soon abandoned the properties, and the Independent took them over and operated the business for a while. By 1930 the two plants were worth only $3,000 or $4,000, while the Independent's debt against them was more than $30,000. On September 23, 1930, the Independent, acting through Roberts as its president, caused a corporation, the Home Ice and Coal Company, to be organized to take over the properties and operate the business. On September 25, 1930, the properties were conveyed to the corporation and it executed two deeds of trust on them to Paul Roberts, trustee, to secure two notes to the Independent, totaling $33,000, due

September 30, 1933. It held the properties and operated the business until February 10, 1934, when the business and most of the property were sold to a competititor, the Nashville Ice Company, and the rest of the property was transferred to the Independent.

The incorporators of the Home Ice and Coal Company were E. C. Winn, A. B. Kirtland and J. F. Harper; but none of them had any financial interest in it. It sold no stock and issued but a few shares, which were held by Winn and wife for the Independent. All that it ever received were the properties conveyed to it and the monies advanced by Roberts and the Independent to enable it to operate. It was managed first by Winn, who was also in charge of the Independent's leading agency, the First Mortgage Bond Company, and later by C. A. Walsh, another employee of the Independent. It was used merely as an agency to protect the interest of the Independent in the properties.

The Independent, Roberts and Walsh joined in the deed by which the business and most of the properties were conveyed to the Nashville Ice Company, agreeing not to engage in the ice business for ten years in Nashville or any other town where the grantee was operating. The consideration for this deed was $37,500, $9,000 cash and $28,500 in notes. It took about $6,000 to clear the properties of liens for taxes and debts on the machinery. The rest of the money and the notes were delivered to the Independent and its conservator; and the balance of the property, a warehouse and some personalty, worth in excess of $1,000, was transferred to them.

This money and these notes in their hands were impounded in this proceeding. The notes were collected, and $31,139.31 (the cash and the proceeds of the notes) was paid to the clerk and master. The Independent's successor in interest (the Standard) and its receiver asserted its claim of $39,173.35, the amount of the two notes secured by the deeds of trust, as entitled to priority, and its claim of $2988.23 ($2,155.23 for advancements and $833.50 for office rent) as entitled to share pro rata with the other creditors; while they alleged that its claims should be subordinated to theirs. Roberts' claim was for $3,869.10, and interest, $1,392.10 for advancements and $2,477 as the value of certain stock of his which was in possession of the First Mortgage Bond Company and was pledged by Winn to the Third National Bank to secure a loan to the Home Ice and Coal Company to meet its operating expenses. On July 31, 1936, the Chancellor ordered a reference to the master to report on all the claims and their order of priority.

On May 11, 1937, the Chancellor vacated the reference except as to the claim of Roberts, and adjudged that the Home Ice and Coal Company was a mere "agency or instrumentality" of the Independent, and that the Independent could assert no claim against it until all its debts "to other parties" had been paid in full. This decree set

320

forth the names and amounts of all the other creditors except Roberts and directed that they be paid. It also recited that Roberts had a claim against the Home Ice and Coal Company and the receiver of the Independent had a claim against him and that $6,000 of the fund should be held to await the adjudication of this controversy, and the balance, about $12,000, should be paid to the Standard.

On April 11, 1940, the master reported that the Home Ice and Coal Company owed Roberts $3,869.10, and that since the decree of May 11, 1937, had subordinated the Independent to all other creditors, no question of priority was now involved. The Standard excepted to the report upon the ground that the master should have reported that the Home Ice and Coal Company owed the Independent $39,173.35 on the notes secured by the deeds of trust and $2,988 on the account, and that this secured claim was entitled to priority. On May 21, 1940, the Chancellor overruled the exceptions, confirmed the report, and decreed that "the defendants, Home Ice and Coal Company, et als., are justly indebted to Paul Roberts" in the sum of $3,869.10, without interest, and that this amount should be paid to him and the balance of the fund should be paid to the Standard. It was from this decree that he and the Standard appealed.

No question is made upon the Chancellor's finding that the Home Ice and Coal Company was a mere "agency or instrumentality" of the Independent, within the rule that the subsidiary corporation will be regarded as identical with, or as the agent of, the parent, and the parent will be held for the subsidiary's liabilities, and its claims against the subsidiary will be subordinated to those of other creditors. McDonald, Shea & Co. v. Charleston, etc., Railroad, 93 Tenn., 281, 24 S. W., 252; Towles & Co. v. Miles, 131 Tenn., 79, 173 S. W., 439; Madison Trust Co. v. Stahlman, 134 Tenn., 402, 426, 183 S. W., 1012; Dillard & Coffin Co. v. Cotton Oil Co., 140 Tenn., 290, 204 S. W., 758; Fidelity Trust Co. v. Service Laundry Co., 160 Tenn., 57, 22 S. W. (2d), 6; Fidelity Mut. Life Ins. Co. v. Guess et al., 171 Tenn., 205, 216, 101 S. W. (2d) 694, 698; Commercial Club v. Epperson, 15 Tenn. App., 649; Powell, Parent and Subsidiary Corporations, ch. VII, pp. 112-115; The Right of a Parent Corporation to Prove a Claim in the Bankruptcy of its Subsidiary, 45 Yale L. Jour., 1471-1479. Compare Nashville, C. & St. L. Ry. v. Faris, 166 Tenn., 238, 60 S. W. (2d), 425; Acuff v. Albert Robbins Co., 1 Tenn. App., 708.

Learned counsel concede that this rule was properly applied as to all the other creditors, but insist that it should not be applied in favor of Roberts. For him it is argued that this question is foreclosed; that the decree of May 11, 1937, that the Independent could assert no claim against the Home Ice and Coal Company until the latter's debts "to other parties" were paid in full, established the right of all other creditors to priority or preference over the Independent, leaving it to Roberts only to prove his claim, to bring himself within

the class preferred by that decree; and that it was a final decree, not appealed from, and the appeals from the decree of May 21, 1940, did not bring up the question of his right to priority, and it is not now open to review. Allen v. Shanks, 90 Tenn., 359, 377, 16 S. W., 715; Lebanon Bank & Trust Co. v. Grandstaff, 24 Tenn. App., 162, 141 S. W. (2d), 924, 927, and authorities there cited.

We do not think the decree of May 11, 1937, determined this question. It did determine that the Independent had dominated the Home Ice and Coal Company to the degree that the Independent's claims should be subordinated to those of the other creditors; but it set forth the names of those so preferred and Roberts was not one of them. His claim was reserved for future determination. As to it the reference, which included both the questions of amount and the right to priority, was continued in force, and the decree directed that "as to this claim the said reference will be executed by the clerk and master." It also recited that $6,000 of the fund should be held until the controversies over Roberts' claim and the receiver's claim against him should be "finally disposed of and adjudicated." These matters were not determined until they were determined by the decree of May 21, 1940.

The argument for the Standard is that Roberts cannot invoke for himself the rule which was applied for the other creditors, because he was not misled, deceived or defrauded, but was himself the president of the Independent and "the man behind the scene" in its domination and use of the Home Ice and Coal Company as its "agency or instrumentality;" and that he cannot complain of such domination and use, deny the separate entities of the two corporations, or say the Independent's claim should be subordinated to his claim.

It is not necessary for one to show that he has been misled, deceived or actually defrauded, to enable him to invoke this rule. It is enough that the parent corporation's domination of the subsidiary was so complete as to make them practically indistinguishable or to make the subsidiary a mere tool, agency or instrumentality of the parent; and that he will suffer loss unless the parent be held. This, we think, was the ground of decision in McDonald, Shea & Co. v. Charleston, etc., Railroad, supra; Towles & Co. v. Miles, supra; Dillard & Coffin Co. v. Cotton Oil Co., supra; Fidelity Mut. Life Life Inc. Co. v. Guess et al., supra. See also United States v. Lehigh Valley R. R. Co., 220 U. S., 257, 272, 31 S. Ct., 387, 55 L. Ed., 458, 463; United States v. Reading Co., 253 U. S., 26, 62, 40 S. Ct., 425, 64 L. Ed., 760, 781. In Nashville, C. & St. L. Ry. v. Faris, supra, this rule was recognized but found inapplicable upon the facts. In Berkey v. Third Ave. R. Co., 244 N. Y., 84, 155 N. E., 58, 61, 50 A. L. R., 599, 605, it was said:

"Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the

subsidiary an agent. Where control is less than this, we are remitted to the tests of honesty and justice. Ballantine, Parent and Subsidiary Corporations, 14 Cal. Law Review, 12, 18, 19, 20. The logical consistency of a juridical conception will indeed be sacrificed at times, when the sacrifice is essential to the end that some accepted public policy may be defended or upheld. This is so, for illustration, though agency in any proper sense is lacking, where the attempted separation between parent and subsidiary will work a fraud upon the law. Chicago, M. & St. P. R. Co. v. Minneapolis Civic & Commerce Ass'n, 247 U. S., 490, 38 S. Ct., 553, 62 L. Ed., 1229; United States v. Reading Co., 253 U. S., 26, 61, 63, 40 S. Ct., 425, 64 L. Ed., 760 [780, 781]. At such times unity is ascribed to parts which, at least for many purposes, retain an independent life, for the reason that only thus can we overcome a perversion of the privilege to do business in a corporate form.''

As stated it is not disputed that the Independent's dominion was so complete as to make the Home Ice and Coal Company its agency or instrumentality. By the ordinary rules of principal and agent, the Independent as principal is liable to Roberts for the acts of its agent within the scope of the agent's authority. It is not denied that the sums he advanced and the loan procured on the pledge of his stock were received by the agent and used in the operation of the business, and thus went directly for the benefit of the Independent. The business was really the Independent's business, and the money advanced by Roberts for operating expenses of the business should be treated as advancements to the Independent. Dillard & Coffin Co. v. Cotton Oil Co., supra.

Nor should it be allowed to escape repaying him what it thus received, because he was its president and knew and approved of the relationship of principal and agent between it and its subsidiary. This was for its benefit and not his, he acted honestly for its interests and not his own, and it seems really to have benefited from the agent's operation of the properties, because it has already received some $13,000 out of the properties which were shown to be worth only about $3,000 or $4,000 when the operation was begun. In this there was nothing dishonest, immoral or wrong and nothing that should repel him from a court of equity. In reason and justice there is no difference between an agency created by contract between two corporations and an agency achieved through the device of one's complete domination of the other. In the former, of course, there is nothing wrong or illegal, and in the latter there is nothing wrong or illegal until the dominant corporation attempts to use the separate legal entity of the other corporation as a screen to hide the real truth of their relationship. Then it becomes ''a mere sham,'' ''a fraud upon the law,'' ''a perversion of the privilege to do business in a corporate form,'' so that recognition of the corporate entity would ''work in-

justice." Towles & Co. v. Miles, supra, [131 Tenn., 79, 173 S. W., 440]; Berkey v. Third Ave. R. Co., supra; Powell, Parent and Subsidiary Corporations, pp. 2, 78-81. That the doctrine of disregard of corporate entity does not exist alone for outsiders, or persons misled or deceived, but may be invoked in a proper case by an officer or stockholder of the corporation, is shown by the decision in Fidelity Trust Co. v. Service Laundry Co., 160 Tenn., 57, 22 S. W. (2d), 6. In that case the legal entity of the corporation was disregarded at the instance and for the benefit of its sole stockholder. Also the fact that Roberts knew and approved of the relationship between the Independent and its agent at the time he made the advancements to the agent, does not affect his right to treat them as advancements to the Independent and to hold it therefor. Dillard & Coffin Co. v. Cotton Oil Co., supra. In that case complainants made advancements to the Planters' Gin Company, with knowledge of its relationship to the Richmond Cotton Oil Company, but without knowledge that both companies were dominated by the Buckeye Cotton Oil Company; and they were allowed recovery for such advancements against all three of the corporations.

Counsel rely upon these quotations from the works of Mr. Powell and Mr. Fletcher:

"A claimant of the subsidiary corporation cannot be said to have been affected by the parent's use of the subsidiary as a mere instrumentality, if with knowledge of all the facts at the time he entered into the transaction with the subsidiary, he accepted or approved the relationship between the two corporations." Powell, Parent and Subsidiary Corporations, p. 83.

"The subsidiary will not be disregarded, or regarded as one with the parent, in favor of one who knowingly dealt with the former formed by the parent to carry out the project." 1 Fletcher, Cyclopedia of the Law of Private Corporations (Perm. Ed.), p. 163, footnote 2.

The principal authority cited for these statements is New York Trust Co. et al. v. Carpenter et al., 6 Cir., 250 F., 668, known as the "Third Carpenter Case." That case is distinguishable from the case before us in at least three particulars: (1) The facts of the Railroad Company's control of the Coal Company, exerted through stock ownership, did not justify the inference that the latter was the former's agent in the usual sense of that word. 250 F., 673; Notes, 32 Harvard L. Rev., 427. (2) There were elements of election and estoppel. After the bondholders of the Coal Company might have sued the Railroad Company upon the theory that it was the principal and the Coal Company was its agent, they, with full knowledge of the facts, elected to look to the Coal Company and limited their rights against the Railroad Company by making a contract with it in the reorganization proceeding by which they were to get from it only

certain royalties based on the quantity of coal mined by the Mining Company and shipped by the Railway Company; and these bondholders in the "First Carpenter Case" Wheeling & Lake Erie R. Co. v. Carpenter, 6 Cir., 218 F., 273, and in the "Second Carpenter Case" Baker v. Central Trust Co., 6 Cir., 235 F., 17, asserted rights under this contract and took a position which was "inconsistent" with their position in the "Third Carpenter Case" that the Railway Company's properties, which were separate from the properties of the Coal Company securing the bonds, could also be subjected to pay the deficit owing to the bondholders after foreclosure sale of the properties of the Coal Company. 250 F., 677, 678. "The action of the bondholders in seeking to treat the bonds themselves as obligations of the railway company was inconsistent both with the bargain made in the reorganization and also with the relief obtained against the railway company in the prior phases of the litigation." 32 Harvard L. Rev., 428. (3) The Railway had its own creditors to whom it owed $8,000,000 secured by mortgage on its properties. It would have been unjust to these creditors to sustain the claim of the Coal Company's bondholders. Where both the parent and its subsidiary are insolvent, it is often necessary to preserve their separate entities in order to do justice to their respective creditors. Acuff v. Albert Robbins Co., 1 Tenn. App., 708. But the right of no other creditor is involved in the present proceeding, the controversy being solely between Roberts and the Independent, or rather its successor standing in its shoes.

For his statement Mr. Fletcher also cites Continental & Commercial T. & S. Bank v. Garden City Co., 123 Kan., 659, 256 P., 983, 986. While that case does stress the fact that the bank made the loan on the security of the subsidiary's land, with knowledge of the subsidiary's relationship to the parent, it also points that there was not "anything improper or unusual" in that relationship; that is, the parent had not so dominated the subsidiary as to make itself liable for the subsidiary's debts.

Counsel cite other cases which are more or less in accord with the excerpts above quoted. We think it unnecessary to review them. The requisite degree of dominion by the parent over the subsidiary, present here, was absent in many of those cases; and in so far as they treat complainant's knowledge of the intercorporate relationship as a ground for denying him relief, we think they are in conflict with our own case of Dillard & Coffin Co. v. Cotton Oil Co., supra. Some of them also emphasize the idea that the fiction of corporate entity will not be disregarded except to prevent wrong or injustice to the complainant. We think the case before us meets this test.

We think it would be a wrong and an injustice to Roberts to allow the Independent, after receiving the benefits of his advancements to

its agents for the operation of its business, to set up the fiction of the agent's corporate entity for the purpose of denying him reimbursement; and, under the authority of Dillard & Coffin Co. v. Cotton Oil Co., supra, by which we are bound, his knowledge and approval of the relationship between the two corporations do not affect his right to recover. Since the two corporations should be regarded not as separate entities but as one and the same, the Independent's claim was properly subordinated to those of all the other creditors, including Roberts. Henry v. Dolley, 10 Cir., 99 F. (2d) 94; The Right of a Parent Corporation to Prove a Claim in the Bankruptcy of its Subsidiary, 45 Yale L. Jour., 1471, 1479.

Nor do we think the Chancellor erred in declining to allow interest on the claim of Roberts. It did not belong to that class of obligations which bear interest by statute. Code, section 7305. Therefore, it was discretionary with the Chancellor to allow or to disallow interest on his claim. We do not think the Chancellor abused his discretion. Tennessee Fertilizer Co. v. International Agr. Corp., 146 Tenn., 451, 473, 243 S. W., 81; Southern Const. Co. v. Halliburton, 149 Tenn. 319, 338, 258 S. W. 409; New England Mut. Life Ins. Co. v. Reece, 169 Tenn., 84, 96, 83 S. W. (2d) 238, 242.

The Chancellor's decree is affirmed. The cause will be remanded for further proceedings not inconsistent with their opinion. The costs of the appeal are adjudged against the Standard Life Insurance Company of the South and the surety on its appeal bond.

Crownover, P. J., concurs.

Howell, J., did not participate.

## On Petition for Rehearing.

FELTS, J. The Standard Life Insurance Company of the South has filed a petition for a rehearing, insisting that our decree subordinating the claims of the Independent to the claim of Roberts operates to prefer him over other creditors of the Independent, and asking a re-consideration upon this point. There are no such other creditors parties to this cause, nor does it appear from this record that there are any such creditors. It does appear that the Independent's assets and liabilities were taken over by the Standard, but it does not appear that there are any unsatisfied creditors of the Independent whose rights are prejudiced by our decree.

The petition is overruled at the cost of petitioner.

Crownover, P. J., concurs.

Howell, J., did not participate.