IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 9, 2005 Session

## DEBRA J. JOHNSON, PHILLIP JOHNSON and BLUE CROSS BLUE SHIELD OF TENNESSEE v. DUPREE OIL COMPANY, INC.

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 98-C-1539     Hon. Jacqueline E. Schulten, Circuit Judge**

---

**No. E2004-01433-COA-R3-CV  - FILED AUGUST 16, 2005**

---

Plaintiff was injured in a fall and the jury returned a verdict for damages against defendant which was approved by the Trial Court. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Michael R. Campbell, Chattanooga, Tennessee, for appellant.

Thomas Crutchfield, and Barton C. Solomon, Chattanooga, Tennessee, for appellees.

### OPINION

In this action, plaintiff sustained severe personal injuries resulting in a knee replacement, when she fell outside a convenience store. After hearing the evidence, a jury returned a verdict against Dupree Oil Company, Inc., for $571,715.74. The jury further found plaintiff to be 25% at fault, and the Judgment was reduced to $428,786.81. The Trial Court concurred in the jury's finding and Judgment was entered. Defendant has appealed.

The trial was held on February 25, 2004, and Ray Harrington, the first witness, testified that he was at the BP Market on the day of plaintiff's injury, and that the weather was partly cloudy and it was sprinkling. He testified that the parking lot was beginning to get wet, and that as he came out of the store he heard someone screaming, and he saw the plaintiff with her knees on the

ground and that the asphalt where plaintiff fell was buckled. He testified that the buckled pavement was obvious, yet the pavement behind the cars was not buckled, and there were no warnings or signs posted.

The next witness, Mike Dupree, called by plaintiff, testified that he and his wife owned the station at the time of the accident, and that they leased the property to Dupree Oil Corporation, and his mother was its president. He testified that Jay Patel retailed the gasoline and remitted the proceeds to Dupree Oil, in lieu of paying rent. He testified that Dupree Oil bought the fuel, put in the tanks, and Patel operated the station and sold the gas for Dupree Oil.

He further testified that pursuant to the lease, Dupree Oil was to pay taxes, insurance, etc.; find an operator; maintain the pumps, tanks, and equipment; and pay rent to Dupree for the property. Further that Dupree Oil was to take care of the property.

Dupree testified that Dupree Oil entered into a Complete Management Fee Agreement ("CMFA") with Patel, and Patel was to run the station pursuant to that agreement. He testified that the Agreement was signed by himself and Patel, but he could not remember whether Patel got all of the attachments, or whether they were part of their agreement. He testified that it was his understanding that pursuant to the Agreement, Dupree Oil was responsible for maintenance of the station and normal wear and tear, but Patel would be responsible for any other damage.

Dupree testified the damage to the asphalt in front of the dumpsters existed long before plaintiff's accident, and that he was aware of it as early as 1996, and did not repair it. He testified that he felt that if the asphalt was repaired, the dumpster trucks would likely just tear it up again, and that the green dumpster had a "no parking" sign on it that was put on there by BFI. He admitted that neither he nor Dupree Oil put up any warning signs, because they did not think customers would park in that area. He opined that customers usually wanted to park closer to the front door, and that Patel did not want to change the position of the dumpsters for security reasons.

Dupree testified Dupree Oil had nothing to do with the operation of the convenience store, and usually used contract operators for that, because it did not like to run the stores. He testified that Patel did not sublease from Dupree Oil, and they chose the CMFA Agreement as opposed to a lease because it was easier to terminate if there was a problem.

Dupree testified that Patel and other employees usually parked in the area where plaintiff fell, but customers only parked there sporadically.

Plaintiff Debra Johnson testified that on the date of her accident she stopped at the BP on her way home from work to get a coke or coffee. That the weather was rainy, dark and gloomy, and the asphalt was wet. She explained that she parked next to the dumpster because the lot was crowded and she wasn't buying gas, and avoided parking at the gas island. She testified that another car was parked beside where she parked, and it pulled out right before she fell. She testified

there were no warning signs or any type of signs in the area.

She testified that when she got out of her car, a man called to her from the fence on her right and told her he had run out of gas and couldn't get home, so she walked over and gave him the $5.00 she had in her hand, and returned to her car to get money from her purse, and proceed into the store. She testified that she took 10 or12 steps before falling, and fell close to the other car. She testified that her foot hit a rut with water in it, stating that her "foot hit the pavement and it just kept right on going". She explained that she fell because her foot hit something uneven, like a rut or hole, and she slipped. When asked about the wet conditions, plaintiff testified that her sock and shoe were wet. She said that she was looking where she was going, and that she had never been to the station before. She testified that the holes in the asphalt had water in them and that she could not appreciate their depth. She was wearing loafers and was not walking fast, and chose the route that she did because it was straight into the store.

After plaintiff rested, defendant called Michael Dupree as a witness, and after explaining the company's origins, development and operations, he testified that he did not see people using the area where the dumpsters were located as a walkway to the store, but he was aware of people going between and behind the dumpsters to relieve themselves. He testified that he never offered or contemplated offering a lease to Patel, and reiterated that he used the Agreement because it was easier to terminate, and it did not give Patel any rights under the Petroleum Marketers Association law.

Larry Angel, the next witness, testified that he was employed as manager of special projects for BFI., and he started to present the service agreement that Patel signed with BFI, and plaintiff objected. When plaintiff's objection was sustained, defense counsel made an offer of proof that BFI entered into a service agreement with Patel, and that according to the agreement, Patel is responsible for any damage to the parking lot caused by BFI trucks. Angel testified in the offer of proof that the damage to the pavement already existed when they first began service there in 1996.

Defense counsel made an additional offer of proof from Patel's deposition, wherein Patel testified that he leased the BP from Mike Dupree, and he was to manage the station and sell gas and other things. Patel testified that he and his wife and two other employees worked there, and he paid them, and his income came from inside store sales. He testified that Dupree had no control over the employees' pay, hours of work, etc., and that he had an agreement with BFI about picking up trash and recycling, and that the agreement said he was responsible for damage to the pavement.

Defense counsel also read a portion of plaintiff's deposition, where she described her fall and said her right foot "slid" forward, and also said she knew she was walking on broken/buckled pavement.

At the conclusion of the evidence, the Court considered the lease document and the CMFA, and ruled that according to those documents, Dupree was the landlord and Dupree Oil was

-3-

the tenant, and Patel was a manager/agent for Dupree Oil. The Court pointed out that the lease provided that Dupree Oil was to indemnify Dupree against any damages, and that Dupree Oil could not sublease the station without written consent from Dupree, and held that the CMFA was not a lease.

At that juncture, defense counsel pointed out that agency was not alleged in the Complaint, and plaintiffs' attorney moved to amend the Complaint to conform to the evidence. The Court granted the Motion, and found there to be no harm because a partnership had been alleged in the Complaint.

The Court then allowed defense counsel to recall Dupree outside the presence of the jury, due to the amendment, and Dupree reiterated that he exercised no control over Patel's operation of the store, his inventory, prices, employees, etc. He stated that Patel had no authority to act for Dupree Oil except to collect receipts from the sale of fuel, and that Dupree Oil's only control over Patel was to set the hours the station had to operate, and set the retail price of the gasoline.

The Court then ruled that the testimony of Patel and Angel would be excluded, because Patel was an agent of Dupree Oil. [Defense counsel conceded that if Patel were an agent, his testimony was not relevant.] Defense counsel then made another offer of proof through Dupree that he had no knowledge of any prior accidents in the area where plaintiff fell, and offered the same proof from Patel's deposition. Dupree further testified (in the jury's presence) that to cure the condition of damaged asphalt would have required removing a 60 by 80 foot section, digging down 18 inches, backfilling, and pouring a 12 inch pad of reinforced concrete

The Court instructed the jury that she had interpreted the contracts introduced and determined that Patel was an agent of Dupree Oil, and that she had directed a verdict for Dupree individually, and he had been dismissed from the lawsuit. The Court then informed the jury that Dupree Oil was the only remaining defendant, and gave her charge to the jury.

Following the jury's verdict, the defendant filed a Motion for a New Trial, raising numerous issues which the defendant alleged to be error. The Court entered a Memorandum Opinion, and found there was "ample proof that would allow the case in its posture at the close of all the proof to go to the jury". The Court also found that each of defendant's issues with regard to the proof allowed were without merit, and in her role as thirteenth juror, found that the jury's verdict was "well within the range of reasonableness and based upon ample evidence". The Court affirmed the jury's allocation of fault, and denied defendant's Motions.

On appeal, the defendant has raised 16 issues for our consideration.

Defendant alleges that the Court erred in failing to direct a verdict for defendant, because reasonable minds could not differ that plaintiff was at least 50% at fault for the accident. Defendant asserts, because plaintiff could have chosen a different route that did not involve crossing the broken asphalt, which condition was obvious to the plaintiff, she chose to take that route anyway.

Further, that plaintiff testified at some point that her foot "slid", which created a possible second cause for the accident, i.e., wet pavement caused by rain over which the defendant had no control.

In reviewing a denial of a Motion this Court must "take the strongest legitimate view of the evidence in favor of the non-moving party. In other words, the Court must remove any conflict in the evidence by construing it in the light most favorable to the non-movant and discarding all countervailing evidence. The Court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence. If there is any doubt as to the proper conclusions to be drawn from the evidence, the motion must be denied." *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994)(citations omitted).

Defendant first argues that Dupree Oil owed no duty to plaintiff, because it was not foreseeable to Dupree Oil that plaintiff would have been in this area of the parking lot. The question of whether a duty is owed is a question of law to be determined by the court. *McClung v. Delta Square Ltd.*, 937 S.W.2d 891, 894 (Tenn.1996). Defendant asserts that it was not foreseeable to Dupree that plaintiff would be in this area, due to the fact that it was not convenient or near the front of the store. Plaintiff explains her reasons for parking where she did, and the photographs demonstrate that this was a likely parking area for patrons who wished to enter the store. Plaintiff's presence in the area of her accident was foreseeable to defendant. *See Jackson v. Bradley*, 987 S.W.2d 852 (Tenn. Ct. App. 1998).

Next, defendant argues that it was unreasonable for plaintiff to utilize this part of the parking lot, relying on *Plunk v. National Health Investors, Inc.*, 92 S.W.3d 409 (Tenn. Ct. App. 2002). In *Plunk*, the plaintiff was denied recovery because she left a concrete walkway and ventured into the landscaping, where she fell in a depression in the grass and broke her ankles. *Id.* The Court ruled that it was not foreseeable to the property owner that plaintiff would take this course, because the landscaping was not intended to be a pathway, and there was no duty to maintain the grassy area in a way that would make it safe for pedestrians. *Id.*; *see also Dobson v. State*, 23 S.W.3d 324 (Tenn. Ct. App. 1999)(plaintiff could not recover where she parked in no parking area and crossed lawn in hurried manner and not on pathway, which caused her to trip over metal landscape border).

This case is distinguishable from the cited cases, however, because the evidence established that plaintiff parked in the parking lot, in an area which was not designated as no parking, and was near the front door, and she was proceeding in a direct path to the front of the store when she fell. The evidence established that plaintiff was in an area of the property designated for public use, as opposed to the plaintiffs in *Plunk* and *Dobson*.

Defendant next argues that the buckled condition of the asphalt was so open and obvious that no reasonable person would have walked on it, and defendant had no duty to warn against or remedy the problem. However, conditions that are open and obvious can be the basis for premises liability if the potential harm is foreseeable, and serious enough to outweigh the burden on the owner to take preventative measures. *Coln v. City of Savannah*, 966 S.W.2d 34 (Tenn. 1998).

Further, regarding the comparative fault of plaintiff in crossing the obviously buckled pavement, we are required to take the strongest legitimate view of the evidence in favor of the plaintiff, and discarding all countervailing evidence. In so doing, it is clear that reasonable minds could differ as to the conclusions to be drawn. Plaintiff testified that she had never been to this station before, and was thus unfamiliar with the pavement's condition. She testified that she waited for a car to move and then proceeded in the most direct route to the front of the store, and did not see the condition of the pavement until she had begun to encounter it. She further testified that because the holes or ruts had water standing in them, she could not appreciate their depth, and based on the evidence in the record, reasonable minds could differ regarding the degree of fault attributable to the parties. We conclude there is material evidence to support the verdict as rendered by the jury.

Finally, defendant argues that the plaintiff advanced an alternate reason for her fall, i.e., slipping on wet pavement, and that defendant had no control over this condition which was not caused by any action or inaction of the defendant. Plaintiff presented evidence, however, that the asphalt was in a rutted and buckled state, and this was this condition which caused her to fall, when she stepped into a rut or uneven spot. She did mention a "slip" at some point and the water standing in the holes, but it is clear in reviewing her testimony as a whole that she attributes the fall to the asphalt being uneven and buckled. We conclude the Trial Court properly denied defendant's motions for directed verdict and JNOV.

Defendant insists that the Court erred in allowing testimony from Michael Dupree, called as an adverse witness, that Dupree Oil was responsible for repairs to the parking lot under the lease between Dupree Oil and Mr. Dupree, while excluding the lease from evidence. While it is true that the lease was not given to the jury to review, it was clearly considered by the Court and relied upon as evidence in the Court's decision regarding its interpretation. In this regard, the Supreme Court has previously stated that:

> If a contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide. However, where the writing is not plain and unambiguous and is such as to require the aid of parole evidence and the parole evidence is conflicting or may lead to more than one conclusion, the doubtful parts may be submitted to the fact-finder for resolution.

*Bratton v. Bratton*, 136 S.W.3d 595, 602 (Tenn. 2004)(citations omitted). Thus, the Court was correct in interpreting the plain terms of the lease and in not presenting the issue to the jury.

Defendant argues the Court should not have allowed plaintiff's counsel to solicit testimony from Dupree regarding the terms of the lease. However, the Court was not relying on the lease for the purpose of making plaintiff a third party beneficiary, as defendant asserts, but simply relied on the lease to determine who was the proper party that owed the duty to maintain the

premises where the plaintiff was injured. Dupree's testimony did nothing but establish that a landlord/tenant relationship existed, and the Court instructed the jury according to the lease. Moreover, Dupree's testimony was was not in conflict with the Court's ruling. This issue is without merit.

Defendant also argues the Court erred in allowing the testimony of Dupree, that the CMFA agreement between Dupree Oil and Jay Patel required Dupree Oil to maintain the parking lot while excluding the agreement from evidence. This argument is without merit for the reasons stated above. The Court considered and interpreted the CMFA, as it was required to do, and determined that Patel was an agent of Dupree Oil rather than a tenant. The document was not excluded, rather, it was simply not a matter that the jury had to decide. Defendant's argument regarding Dupree's testimony about the CMFA is superfluous because Dupree's testimony regarding same did not touch on any issue which the jury was required to decide. This issue is also without merit.

Defendant further argues that the Court erred in allowing testimony from Dupree that the maintenance of the parking lot was the responsibility of Dupree Oil under an alleged maintenance responsibilities section of the agreement between Dupree Oil and Patel, when there was no evidence to authenticate the maintenance responsibilities section as part of the agreement. However, Dupree testified that it was Patel who was responsible for extraordinary damage, such as that caused by dumpster trucks, and in so doing he relied upon his understanding of the CMFA, without referring to any specific section. But once the Court ruled that Patel was an agent of Dupree Oil, rather than a lessee, this testimony lost it's relevance. Due to the Court's interpretation of the documents and its ruling that Dupree Oil was the tenant and the party responsible for the parking lot maintenance, the testimony did not touch on an issue which the jury ultimately had to decide. While Dupree could never state with certainty that the attachment was part of the agreement, the Court interpreted that part of the agreement that had been authenticated by Dupree, and instructed the jury accordingly. Assuming there was some error in allowing Dupree to testify regarding the unauthenticated attachment (when it is not at all clear that he was actually doing so) such error would be harmless. Tenn. R. App. P. 36(b).

Defendant argues that the Court erred in excluding testimony of Mr. Dupree showing that Patel had possession and control of the premises and that Dupree Oil did not exercise control over Patel's operation of the convenience store, such that the arrangement between Dupree Oil and Patel created a lease with respect to which Patel was the lessee. In this regard, the Court ruled based on the lease and the CMFA that Dupree Oil was the lessee, and that Patel as the manager was merely an agent and not a sublessee. Defendant asserts the Court was in error, but gives no specific reasons for its assertion. The Court considered the proof, which consisted of the documents themselves and Dupree's testimony, and properly ruled that Dupree Oil was the lessee, and that the CMFA was not a lease. Moreover, Dupree's testimony supports this ruling, in that Dupree testified he did not sublease the station to Patel for very specific reasons (i.e. leases were harder to control/terminate) and thus Dupree Oil was the tenant and he was the landlord. Dupree never contended that the CMFA was a lease. Moreover, the documents are unambiguous and speak for themselves, and the

Trial Court properly construed them.

Next, defendant argues that the Court erred in excluding testimony of Patel showing that he had possession and control of the premises and managed the service station, such that the arrangement between Dupree Oil and Patel created a lease with respect to which Patel was the lessee. Again, this issue is without merit,. The Court had the actual documents and properly considered and construed them based upon their plain terms. The fact that Patel at one point in his deposition stated that he "leased" the station was a mere conclusion without any factual basis.

Defendant asserts that the Court erred in excluding the testimony of Larry Angel, special projects manager for BFI, showing that BFI entered into a service agreement with Patel for the convenience store under which Patel assumed responsibility for any damage to the pavement resulting from BFI's trucks. Based on the Court's finding that Patel was an agent of Dupree Oil, however, this evidence has no relevance to the issues before the jury.

Defendant argues that the Court erred in excluding the testimony of Mr. Dupree to the effect that there had been no prior accidents, injuries, or complaints relative to the broken pavement where the plaintiff fell. Defendant argues that past experience has bearing on the issue of foreseeability and notice. Dupree testified, however, that he knew about the extremely buckled condition of the asphalt for at least a year and a half prior to plaintiff's accident, so there was no question of his knowledge of the condition. While there are cases where evidence of prior problems has been deemed relevant to show notice of a dangerous condition (*see Sweeney v. State*, 768 S.W.2d 253 (Tenn. 1989)), defendant does not point to any authority where the lack of prior accidents has been allowed to "take away" the defendant's knowledge of a dangerous condition. Since Dupree admitted that he knew of the state of the pavement for at least a year and a half prior to plaintiff's fall, there was no reason to allow any evidence regarding a lack of prior accidents. In other words:

> In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.

*Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). In this case, where actual knowledge was admitted by Dupree, there was no need to go any further to determine if defendant should have had constructive knowledge by virtue of previous incidents.

Defendant argues that it was likewise error for the Court to exclude the testimony of Patel that there had been no prior accidents in the area where the plaintiff fell. For the reasons set forth, this issue is without merit.

Defendant argues that the Court erred in ruling that Dupree Oil was the tenant/lessee of the premises instead of Patel, and was responsible for maintaining the parking lot. Defendant asserts that the Court relied upon the lease and CMFA, which were not in evidence. This conclusion is incorrect and was previously addressed. But the defendant also asserts the documents do not support this conclusion.

A review of the lease and the CMFA supports the Trial Court's conclusion that Dupree Oil was the lessee, and Patel was not. The lease places Dupree Oil in the lessee posture. The CMFA, on the other hand, refers to Dupree Oil as a "seller" and to Patel as a "manager" and sets forth that the seller will provide gasoline to manager for sale to the public, and shall fix the retail price for the same. Manager is to "receive use of premises in lieu of paying rent as long as Seller's Gasoline is sold and paid for as agreed." The agreement further states that the manager is to "collect and be responsible for the proceeds" of all sales of gas, to be remitted to seller on a daily basis. Manager's duties also include operating the station during certain specific hours, treating customers courteously and honestly, maintaining the restrooms, providing employees, and keeping the property clean and neat.

Noticeably absent from the CMFA, however, are the words "lease", "lessor", or "lessee", and any provisions giving Patel exclusive possession of the property. The CMFA states that Dupree Oil may lease areas outside the store to other parties that do not directly compete with the store. The CMFA makes clear that Patel is simply to manage the station and sell defendant's gas, and in return Patel can utilize the store to sell other products.

While the documents are unambiguous, the testimony also supports the Court's ruling, in that Dupree testified that Dupree Oil never offered or contemplated offering a lease to Patel, because leases are harder to terminate. The intent of the parties was clearly that Patel was to manage the station and sell gas for Dupree Oil, and in return he would get to use the store building to sell his own goods, which would be his compensation. We find no error in the Trial Court's ruling that Dupree Oil was the lessee of the property, rather than Patel.

Defendant argues that the Court erred in ruling that the Complete Management Fee Agreement established a principal/agent relationship between Dupree Oil and Patel, such that any negligence on the part of Patel in failing to maintain the asphalt parking lot was attributable to Dupree Oil. While defendant is correct in its assertion that existence of an agency relationship "is a question of fact under the circumstances of the particular case" (*see Johnson v. LeBonheur Childrens Medical Center*, 74 S.W.3d 338 (Tenn. 2002)), it does not follow that the Trial Court erred in instructing the jury that Patel was an agent as opposed to a lessee. The agency issue is not relevant. The relevance is whether Patel was a tenant with a duty to maintain the parking lot, and the Court ruled, pursuant to the documents, that he was not. Because Patel was not a lessee, and had no duty to maintain the lot, his actions/inactions or his status as an agent were not material issues in the case. Moreover, the parties agree that whomever is the lessee, that party had responsibility for the condition of the parking lot, and the documents resolve the issue.

Defendant argues that the Court erred in allowing plaintiffs to amend their complaint near the end of the trial to allege that Patel was the agent of Dupree. Defendant states that it was prejudiced by the late amendment, and that had it known that agency was to be alleged, it would have developed other proof through Patel. The Complaint did allege Dupree Oil was in partnership with Patel, and plaintiff argues that this was sufficient to put defendant on notice regarding claims of agency/vicarious liability, such that prejudice cannot be shown. Generally speaking, partnerships do involve questions of agency, so plaintiff's argument in this regard has some support. *See Nashville, C. & St. L. Ry. v. Faris*, 60 S.W.2d 425 (Tenn. 1933); *Southern Bell Tel. & Tel. Co. v. Lee*, 292 S.W.2d 45 (Tenn. Ct. App. 1955).

More importantly, however, defendant can show no prejudice by allowing this amendment to conform to the evidence, because the proof showed that Dupree Oil was the tenant of the property, and it was responsible for maintenance of the parking lot pursuant to the lease agreement. Dupree Oil could not show that this duty to maintain the parking lot was delegated to Patel pursuant to the CMFA, and the Court looked at these documents and interpreted them in that manner.

Defendant argues that the Court erred in failing to give defendant's requested instruction number 4 regarding premises liability, which stated as follows:

> This is a premises liability action. In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty imposed on the premises' owner or occupier, however, does not include the responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated.

Defendant cites to the case of *Rice v. Sabir*, 979 S.W.2d 305 (Tenn. 1998), as authority for this instruction.

> Our Supreme Court has given the following guidance with regard to jury instructions:
>
> Where the court correctly charges the law applicable to the case, it is not error to deny a special request that embodies a theory of a party if the court charges in general terms and with clearness sound propositions of law which would guide the jury in reaching a correct decision in the case. The correct rule is stated in *Mitchell v. Smith*, 779 S.W.2d 384, 390 (Tenn. App. 1989):
>
> Trial courts should give a requested instruction if it satisfies three requirements: (1) it is supported by the evidence, (2) it embodies the party's theory, (3) it is a correct statement of the law. However, they need not give a special instruction whose substance is already covered in the general charge.

*Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 445 (Tenn. 1992)(citations omitted).

In this case, the above requested instruction was already covered in the general charge given by the court. The court instructed the jury as follows:

> One who owns, occupies, or leases property is under a duty to use ordinary care which is the care that an ordinary careful person would use to avoid injury to themselves or others under the same or similar circumstances. There is no duty to guarantee the safety of those entering upon the property. You should consider all the surrounding circumstances in deciding if the defendant used such care.

> A danger that is open and obvious does not for that reason alone relieve a defendant of a duty of care. If the foreseeability and gravity of harm posed from a defendant's conduct, even if open and obvious, outweighed the burden on the defendant to engage in alternate conduct to avoid the harm, there is a duty to act with reasonable care; and the circumstances of the case are analyzed under the comparative fault theory.

> To recover for an injury caused by a defective or unreasonably dangerous condition of the property, the plaintiff must show that the defendant either created the condition or knew of it long enough to have corrected it before plaintiff's injuries, or that the condition existed long enough the defendant using reasonable care should have discovered and corrected the condition.

> The existence and scope of a duty of the defendant in any case rests upon the relevant circumstances, including the foreseeability of harm to the plaintiff and others similarly situated. There is no duty on a business to protect persons who come on its premises from unforeseeable harm.

> In order to prevail in a premises liability action, the plaintiff must show that the injury was a reasonably foreseeable probability and that some action within defendant's power more probably than not would have prevented the injury.

The Court's charge correctly presents the law applicable to the case, and thus it was not error to deny defendant's request, because the Court covered that request in the general charge, and the charge clearly presented "sound propositions of law which would guide the jury in reaching a correct decision in the case." *See Otis*, *supra*. This issue is without merit.

Defendant also argues that the Trial Court erred in failing to give its requested instruction number 8 regarding non-use areas, which stated as follows:

> Owners and occupiers of business premises have a duty to maintain their premises in a safe manner only in areas where customers or the public will foreseeably be present. Conversely, there is no duty on property owners and business to use care to

maintain places where it is not reasonably foreseeable that customers or the public will be present.

As stated above, this request is also covered by the general charge, in that the general charge explains that harm must be foreseeable in several places. Thus, this requested instruction would be duplicative, and this issue is without merit.

Defendant argues that the Trial Court erred in failing to give its requested instruction number 10 regarding "alternative route", which states as follows:

In determining whether Mrs. Johnson was negligent, you may also consider whether she used an unsafe way to go to the store when there was a safe way for her to travel. If Mrs. Johnson chose an unsafe route to the store when there was a safe route available, then such conduct would be negligence.

Defendant relies on the unreported decision of the Western Section of this Court in *Morgan v. McCrory*, 1997 WL 266816 (Tenn. Ct. App. May 20, 1997), wherein this Court affirmed the trial court's grant of a directed verdict in favor of a landlord, where the tenant fell and was injured while crossing a cracked driveway, and where said tenant had lived there for three years before the accident, knew the condition existed (and had complained about it to the landlord), and admitted that she could have taken an alternate route which was safer but less convenient. The Court based its decision on the following rule of law:

Attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk.

In this case, the Trial Court instructed the jury that "plaintiff has the duty to use reasonable care for plaintiff's own safety and to make responsible use of plaintiff's senses. The plaintiff has a duty to see or be aware of a defect or unreasonably dangerous condition that is obvious or should be discovered for the use – through the use of reasonable care." This is in accord with the rule relied upon by the Court in *Morgan* - therefore, this request was also covered in the general charge and it was not error for the trial court to refuse it.[1]

Finally, defendant argues that the Trial Court erred in failing to give its requested instruction number 11 regarding rainfall, which stated:

---

[1] Additionally, this requested instruction was not necessarily supported by the facts in evidence, in that plaintiff testified that it was her first trip to this store, and thus she did not know about the condition of the pavement for 3 years as the plaintiff did in *Morgan*.

If the plaintiff, Mrs. Johnson, fell as a result of slipping on wet pavement, then she may not recover. Rain is an Act of God, and its effect on walking surfaces and traction is common knowledge.

Defendant argues that this instruction was warranted because plaintiff's testimony was "conflicting" about the cause of her fall. Defendant argues that plaintiff testified at one point that her foot "slid forward" on wet pavement, while at other times stating that her foot went in a rut or hole in the pavement. A review of all of plaintiff's testimony, however, shows that it was not inconsistent - plaintiff consistently maintained that she fell due to the uneven state of the asphalt, and that her foot went into a hole or rut, not that she simply slipped due to wet conditions. Thus, this instruction was not warranted given the evidence presented in the case.

Further, defendant relies on the case of *Butts v. City of South Fulton*, 565 S.W.2d 879 (Tenn. Ct. App. 1977) as authority for this requested instruction, but *Butts* was an action against a municipality by a property owner for flooding, and does not really stand for the idea represented in this requested instruction. Plaintiff's comparative fault was adequately covered by the Court in its general charge, and this issue has no merit.

For the foregoing reasons, the Judgment of the Trial Court is affirmed, and the cost of the appeal is taxed to Dupree Oil Company, Inc.

_____
HERSCHEL PICKENS FRANKS, P.J.